**UNITED STATES**

**v.**

**Second Lieutenant Naomi J. HAYE, 502–76–7930 FV, United States Air Force.**

**ACM 25873.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 10 Nov. 1986.

Decided 3 Feb. 1988.

---

**3.** Government's MOTION TO FILE AFFIDAVIT    is GRANTED.

Appellate Counsel for the Appellant: Morgan E. Welch, North Little Rock, Colonel Leo L. Sergi and Lieutenant Colonel Patrick C. Sweeney.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Carole W. Hanson.

Before FORAY, BLOMMERS and MURDOCK, Appellate Military Judges.

## DECISION

MURDOCK, Judge:

A general court-martial with members found the appellant guilty of two specifications of adultery and one specification of fraternization. The military judge set aside the guilty finding of one specification alleging adultery because it was multiplicious with the fraternization specification. The appellant was sentenced to dismissal and total forfeitures. Because she did not receive any confinement, the convening authority reduced the forfeitures to $848 per month for twelve months. R.C.M. 1107(d)(2), Discussion. The appellant has asserted nine assignments of error. We will discuss three.

### I.

The appellant was charged with two specifications of adultery. The original Charge refers to her activities with a technical sergeant who was a subordinate on her missile combat crew. The Additional Charge refers to her activities with a captain. Referring to testimony relating to the Additional Charge, the appellant asserts that the military judge erred in admitting evidence derived from an inadmissible confession. The affair with the captain occurred, and ended, about six months before the one with the sergeant occurred. After the appellant's husband, himself an active duty technical sergeant, learned of the affair with the sergeant, he became suspicious of all her activities. Eventually, he focused on her relationship with this particular captain.

Upset and suspicious, he called the captain and arranged to meet him in a shopping mall parking lot. Both parties describe the meeting as amicable, but it apparently did not satisfy the husband. He asked the captain to reveal the affair to the

captain's wife. The captain told him he "probably would not." Early the next morning, the captain's wife was told of the affair in an anonymous telephone call.

About three months later, the captain received an early morning call from the appellant's husband demanding that he come to the appellant's house immediately. The captain complied. The husband was in an angry, confrontational mood. He used "abusive language" and physically grabbed the captain. Shortly before the visit ended, the husband kicked a small television set off a table.

After the captain left, the husband forced the appellant to go to the base security police station to make a statement about her affairs. The husband testified that before they went he hit and threatened her and that he "physically forced" her to go. He further testified that he considered her statement to have been involuntarily given, and that if she had refused to give it he would "probably" have "hit her again".

The trial judge found the statement had been coerced, and was not voluntary. He suppressed the statement, but did not suppress the captain's testimony as derivative evidence flowing from the statement. In his findings the judge stated

> (M)y view is this is a classic case of inevitable discovery. There is absolutely no doubt in my mind that, even apart from the accused's statement, that these facts would have been reported and investigated. And, therefore, I don't find that the derivative evidence or fruit of the poison tree doctrine should be applied to the testimony of Captain

.    .    .    .    .

At the defense counsel's request, the judge made a further explanation:

> My conclusion is based upon the testimony of the witnesses. My conclusion is, admittedly, circumstantial, but it is a factual conclusion that I am authorized to make in ruling on this legal issue and to me there is overwhelming circumstantial evidence that this matter would have been reported to authorities quite apart from the accused's coerced statement to

the Security Police, if not directly from her husband, then from Captain ... in reaction to the confrontations which were likely to continue with her husband.

As appealing as this analysis may be, it does not apply the inevitable discovery doctrine as we understand it to have been interpreted by the Court of Military Appeals.

Courts are frequently troubled by how to treat evidence associated with an unlawful search or seizure. The most central statement was announced by the Supreme Court in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), where the Court articulated the "fruit of the poisonous tree" doctrine.

■ There are three principal exceptions to total exclusion of derivative evidence. The first exception allows admission where knowledge of the evidence is gained from an "independent source". *Silverthorne Lumber Co., Inc. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). The second is where the connection between the unlawful act and the evidence has "become so attenuated as to dissipate the taint". *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). The third exception, and the one involved in the present case, is the doctrine or rule of inevitable discovery. *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

The Court of Military Appeals applied the inevitable discovery rule to courts-martial in *United States v. Kozak*, 12 M.J. 389 (C.M.A.1982). They stated what would allow evidence to be admitted under the inevitable discovery rule:

> In applying this exception to the exclusionary rule in the future, we will require that after an accused challenges the legality of a search, the prosecution must, by a preponderance of the evidence, establish to the satisfaction of the military judge that when the illegality occurred, the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence and that the

evidence would inevitably have been discovered in a lawful manner had not the illegality occurred.

12 M.J. at 394.

■ The clear language of *Kozak*, and cases which have followed it, convince us that we should apply inevitable discovery carefully and narrowly. Without such restraint the doctrine will support almost any supposition or hunch a prosecutor can propose.

In *United States v. Butner*, 15 M.J. 139 (C.M.A.1983), a case very similar to the present one, the Court of Military Appeals refused to apply inevitable discovery. Security police investigators received a lead that Butner might have stolen a dormitory television set. Butner made a statement after an investigator threatened to "hang a snitch coat" on him (reveal him as a police informer). Butner implicated his roommate, Cady, in the statement. Finding coercion, the Court refused to admit the statement. Butner's statement was not the only mention of Cady's name to the police. At least one tipster had told them that the television set was in Cady's apartment. The Court refused to admit Cady's testimony under the inevitable discovery theory stating:

> Thus, it is obvious that sooner or later the security police would have gotten around to interviewing Cady. Recently in *United States v. Kozak*, 12 M.J. 389 (C.M.A.1982) we adopted "the so-called inevitable discovery rule." *Id.* at 391–92, 393. However, we decline to apply such a rule to Cady's testimony since, absent appellant's tainted confession, it is not at all clear that Cady would inevitably have implicated appellant. Indeed, we note that appellant himself initially assumed total responsibility for the crime—perhaps Cady would have held out longer.

15 M.J. at 143. The Court went on to hold that Cady's statement was admissible on other grounds because there had been sufficient breaks in the causal chain to dissipate the taint. We do not find adequate dissipation in the present case.

■ The military judge erred when he failed to suppress the captain's testimony.

Because the information was not already in police hands, or being actively pursued by them, at the time the coerced statement was made, the captain's testimony does not fit the restrictive definition of *United States v. Kozak, supra.* We are also unpersuaded that the captain's involvement, inevitably, would have come to official attention. *United States v. Butner, supra.* Without either the appellant's statement or the captain's testimony, the proof of the Additional Charge fails. Accordingly, we set aside and dismiss the Additional Charge and its specification.

II.

Next, the appellant asserts the military judge erred by allowing two witnesses to testify to extrinsic acts which were not proper rebuttal. We disagree. The appellant testified that her relationship with Technical Sergeant Bush, the basis of the offenses in the Charge, was professional and proper. She stated she was counselling him to help him resolve his ongoing marital difficulties. She also testified that it was Sergeant Bush, and not she, who was sexually aggressive.

The government attempted to rebut her testimony by showing that her relationship with Sergeant Bush had not been professional and that she was sexually aggressive. During cross-examination the appellant was asked whether she had given a card which said "good for one free sexual encounter" to a named captain. She admitted showing the card to the captain but denied giving it to him. Then she was asked whether she told the captain she was serious about what it said on the card when the two of them returned to her house. She denied making the statement.

The trial counsel then called two witnesses in rebuttal. The first testified she thought the appellant and Sergeant Bush were "ending up together" frequently in the office. She further testified that the appellant and Sergeant Bush "would always have their heads together close" as they talked.

The next witness was the captain to whom she had shown the card mentioned above. He testified the appellant showed him the card and then placed it in her purse. Further, he testified that when they got to her house she told him she meant what was on the card.

■ Rebuttal need not be devastating, or even effective, to qualify as proper rebuttal. The testimony elicited from both of these witnesses was a proper effort to counter appellant's testimony about having been the subject of Sergeant Bush's sexual aggression. R.C.M. 913(c)(1)(C). The military judge correctly allowed the testimony.

### III.

The appellant also asserts she was denied a speedy trial as to the two specifications of the Charge. We disagree. Like the trial judge, we find she was brought to trial within the 120 days allowed by R.C.M. 707.

■ There was no pretrial restraint in this case, so we begin our analysis with preferral of the Charge on 27 June 1986. R.C.M. 707(a). Because the appellant entered pleas of not guilty, the accountable time terminated upon presentation of evidence on the merits to the factfinder. R.C.M. 707(b)(3)(B). That occurred on 6 November 1986, 132 days after preferral of the Charge.

The parties apparently agree that the periods 8 to 14 August, and 27 August to 23 September are deductible as defense requested delays. R.C.M. 707(c)(3). Even if there is not complete agreement on the designation of these days, we find them to be properly attributed to the defense. These periods total 33 days.

Next, there is a period from 30 June until 10 July on which there is considerable disagreement. The Article 32, U.C.M.J., investigation was originally scheduled to begin on 30 June. Although it is unclear exactly what happened, the Article 32 investigating officer testified that he notified the appellant's military counsel of the proposed date for the Article 32 hearing. During that conversation he learned the appel-

lant had retained civilian counsel. When he called the civilian attorney's office he remembers being told by the attorney's secretary that he would not be available until 10 July.

■ The investigating officer apparently treated his conversation with the civilian attorney's secretary as an official defense request for a delay. That was error. The appellant was represented by military counsel. The civilian attorney did not make his formal appearance in the case until he sent a letter dated July 7, 1986. When the government chooses to delay a trial proceeding of an accused with counsel, when there has been no specific request for delay, it may not later try to characterize the delay as defense requested. If the military defense counsel wanted to delay the Article 32 investigation until civilian counsel could attend, he could have requested a delay. In the absence of such a request, the investigation should have proceeded as planned.

On 10 July the military defense counsel officially requested a delay until 15 July. This five day delay brings the total of defense requested delays to 38. Subtracting this from 132 results in 94 days from preferral to presentation of evidence. Subtracting the two days spent in pretrial motions further reduces the total accountable time to 92 days, well within the limit established by R.C.M. 707. R.C.M. 707(c)(1)(C).

### IV.

■ We must now consider the sentence. After our dismissal of the Additional Charge, the appellant stands convicted of one charge of knowing and willful fraternization involving a sexual relationship with a technical sergeant who was a subordinate on her missile combat crew. Having reassessed the sentence, we are convinced her approved sentence of dismissal and forfeiture of $848 per month for 12 months is appropriate in relation to the affirmed findings of guilty and is no greater than that which would have been imposed if the prejudicial error had not been committed. *United States v. Sales*, 22 M.J. 305 (C.M.A.

1986). Accordingly, the findings of guilty, as modified, and the sentence are

AFFIRMED.

Senior Judge FORAY and Judge BLOMMERS concur.