UNITED STATES, Appellee,

v.

Specialist Donnie C. RAMSEY,
431–37–2591, United States
Army, Appellant.

ACMR 9101640.

U.S. Army Court of Military Review.

1 Sept. 1992.

As Amended 3 Sept. 1992.

For Appellant: Captain Robin N. Swope, JAGC, Captain Robert L. Carey, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Joseph C. Swetnam, JAGC, Captain Marcus A. Brinks, JAGC (on brief).

Before JOHNSON, WERNER, and GRAVELLE, Appellate Military Judges.

OPINION OF THE COURT

WERNER, Judge:

In accordance with his pleas, the appellant was found guilty by a military judge

sitting as a general court-martial of wrong-fully and intentionally inflicting injury upon himself in a hostile fire pay zone, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for eighteen months, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved partial forfeitures in the amount of $500.00 pay per month for eighteen months and the remainder of the sentence as adjudged.

The appellant was charged with ma-lingering in violation of Article 115, UCMJ, but elected to plead guilty to the lesser-included offense cited above pursuant to a pretrial agreement.[1] The stipulation of fact appended to the pretrial agreement and the trial judge's plea inquiry revealed that the appellant, while stationed in Saudi Arabia in January 1991 during Operation Desert Storm, became despondent after he discovered that he had a venereal disease which he suspected was given to him by his wife. A telephone call to his wife in Ger-many confirmed his suspicion. He also learned that his wife had contracted the disease in the course of an extramarital affair and was about to abandon their chil-dren. A request for leave to Germany was denied (presumably because hostilities had begun). As a result of his misfortune, the appellant became depressed and shot him-self in the shoulder during an abortive at-tempt at suicide.

The appellant contends that his pleas of guilty were improvident on grounds of le-gal insufficiency and misapprehension of the maximum punishment. We disagree.

 The appellant asserts that self-infliction of injury resulting from attempt-ed suicide is not an offense under the Code.

Contrary to appellant's assertion, one who intentionally inflicts injury upon himself without a specific purpose of avoiding work, duty, or service, may violate Article 134, UCMJ, if his act is committed under circumstances prejudicial to good order and discipline or discrediting to the armed forces. *United States v. Taylor,* 38 C.M.R. 393 (C.M.A.1968); *United States v. Grubb,* 6 C.M.R. 550 (A.F.B.R.1952). More recent authority includes the Manual for Courts–Martial and *dicta* in an opinion by the United States Court of Military Appeals. *See United States v. Johnson,* 26 M.J. 415, 417, n. 3 (C.M.A.1988). The gravamen of the offense of intentional self-infliction of injury is the deleterious impact of the ac-tion on a military unit or community that prejudices good order and discipline or dis-credits the armed forces. This may include such effects as the loss of personnel from duty, the burden on medical resources, and the damage to morale and discipline. The accused's reason for performing that act is relevant in determining whether the of-fense of malingering was committed. Where an accused inflicts injury upon him-self to avoid work, duty or service, he satisfies the additional element that estab-lishes the offense of malingering. More-over, if the self-inflicted injury occurs in a hostile fire pay zone, that too is an addi-tional element that may escalate punish-ment. MCM, Part IV, para. 40e(4). The circumstances admitted by the appellant during the providence inquiry clearly estab-lish that his act of attempted self-destruc-tion had a negative impact on the ability of his unit to perform its mission and was, therefore, prejudicial to good order and dis-cipline. Accordingly, his contention that his pleas were legally insufficient is with-out merit.

---

1. The elements of the offense of malingering in a hostile fire pay zone are:
 (1) That the accused was assigned to, or was aware of prospective assignment to, or availabil-ity for, the performance of work, duty, or ser-vice;
 (2) That the accused feigned illness, physical disablement, mental lapse or derangement, or intentionally inflicted injury upon himself or herself; and
 (3) That the accused's purpose or intent in doing so was to avoid the work, duty, or service.
 (4) That the offense was committed (in time of war) (in a hostile fire pay zone).
 The accused's plea admitted all but element (3) of the offense.
 Manual for Courts–Martial, United States, 1984, Part IV, para. 40b. [hereinafter MCM].

We also find that, although the appellant was not apprised of the correct maximum confinement imposable for the offense, it did not affect the providence of his pleas. In advising the appellant of the quantum of confinement, the military judge stated:

The problem is this: While the particular portion of [Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial] 1003c(1)(b)(i) suggested that in this type of situation that the maximum punishment would be related to the greater offense of intentional self-inflicted injury in a time of war or hostile fire pay—and that point was fairly strenuously argued by the government, the fact of the matter is, that what we have is a lesser included offense. Without being too simplistic, lesser included suggest to me something lesser. Furthermore, while we talked about the fact that hostile fire pay was involved, there are actually a couple of different aspects to the situation that we have here. I have absolutely no authority for picking seven years other than the fact that it's less than the maximum punishment to which the accused has been charged with. Yet I find it more than just the offense of intentional self-inflicted injury, and that's partly because of the war time hostile fire pay. Now, I will cover this during the providence inquiry when we get to this aspect, because obviously no one is in a position to cite what the maximum punishment is in this type of a situation. I don't know. I would suggest that neither counsel knows and I would suggest that the case law is unavailable to indicate that. So I picked a date; it's not altogether arbitrary. The intent was to clearly delineate that it is a lesser punishment, and yet to separate it from some of the other lesser offenses that may apply here. I suppose ultimately if this matter is of import and is to be resolved, it will be resolved at the appellate level.

In determining that the maximum confinement was seven years, the military judge selected a period of time that was less than that listed for an intentional self-inflicted injury in a hostile fire pay zone or in time of war (*i.e.*, ten years), but more than that listed for an intentional self-inflicted injury (*i.e.*, five years). MCM, Part IV, para. 40e. We agree with the judge's statement that he had no authority to make this determination; we disagree with his pronouncement that his action was not arbitrary as he failed to follow the guidelines set forth in Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1003(c)(1)(B)(i). That rule provides in pertinent part:

For an offense not listed in Part IV of this Manual which is ... closely related to an offense listed therein the maximum punishment shall be that of the offense listed; however if an offense not listed is included in a listed offense, and is closely related to ... two or more listed offenses, the maximum punishment shall be the same as the least severe of the listed offenses.

■ In *United States v. March*, 32 M.J. 740 (A.C.M.R.1991), this court, *en banc*, found that the maximum punishment for the unlisted offense of fraternization between a noncommissioned officer and a subordinate should be the same as that for the listed offense of fraternization between a commissioned officer and an enlisted person. The underlying rationale for the court's holding was that the elements of the offenses were "closely parallel" to each other in the manner in which they affected good order and discipline in that both involved improper superior-subordinate relationships. At the same time, the court determined that fraternization between a noncommissioned officer and a subordinate was not closely related to a simple disorder punishable by a substantially lesser punishment.

The instant case presents a similar question with the difference being that the offense of intentional self-injury without intent to avoid service, though not listed separately, is mentioned in the Manual as a lesser-included offense of malingering. Here, as in *March*, the defense argues that the offense is closely related to other, less onerous offenses. Among them are: disorderly conduct punishable by a mere four months confinement and partial forfeitures

for the same period, MCM, Part IV, para. 73; willful discharge of a firearm punishable by a dishonorable discharge, confinement for one year, and total forfeitures, MCM, Part IV, para. 81; and involuntary manslaughter punishable by a dishonorable discharge, confinement for three years, and total forfeitures, MCM, Part IV, para. 44. The government asserts that it is closely related to malingering and, since it occurred in a hostile fire pay zone, should have been punishable by a dishonorable discharge, confinement for ten years, and forfeiture of all pay and allowances. Our examination of the elements of the relevant offenses leads us to conclude that the offense of intentional self-injury without intent to avoid service in a hostile fire pay zone is most closely related to malingering in a hostile fire pay zone and should be identically punishable. Furthermore, both offenses have the same deleterious impact on the appellant's unit thereby prejudicing order and discipline in the same fashion. Finally, the express language of the Manual does not distinguish between the two offenses in setting out the maximum punishment. MCM, Part IV, para. 40e. This evinces the drafters' intent that the maximum punishment for intentionally inflicting self-injury should be the same regardless of the perpetrator's motive.

■ Despite the error, the appellant was not prejudiced with respect to his decision to plead guilty. The military judge informed the appellant that because the Manual was ambiguous, he was not certain of the maximum punishment for the offense. He advised him that the maximum permissible sentence could range from as low as "no discharge, two-thirds forfeiture of pay for four months, confinement for four months, and reduction to Private E1" (for the offense of disorderly conduct), to as much as a "dishonorable discharge, forfeiture of all pay and allowances, confinement for ten years, reduction to Private E1" (for the offense of malingering in a hostile fire pay zone), but that in any event, the judge would cap the maximum confinement at seven years. He then asked the appellant whether the ambiguity in the Manual would affect his decision to plead guilty.

When the appellant, after consulting with his counsel, answered that it would not, the judge accepted his pleas of guilty. We hold that the appellant's pleas were unaffected by the judge's misadvice concerning the maximum punishment and were therefore provident. *United States v. Poole*, 26 M.J. 272 (C.M.A.1988); *United States v. Hunt*, 10 M.J. 222 (C.M.A.1981).

 We have also considered the propriety of the appellant's sentence in light of the mitigating circumstances under which the offense was committed and find it to be appropriate.

The findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge GRAVELLE concur.