578

UNITED STATES

v.

**Airman First Class Sebastian R. KORDA, FR472–82–0404 United States Air Force.**

ACM S28577.

U.S. Air Force Court of Military Review.

Sentence Adjudged 21 Aug. 1991.

Decided 20 Nov. 1992.

Appellate Counsel for the Appellant: Captain Marc A. Fox (argued), Colonel Jeffrey R. Owens, and Major Alice M. Kottmyer.

Appellate Counsel for the United States: Major John H. Kongable (argued), Lieutenant Colonel Brenda J. Hollis, Lieutenant Colonel Jeffery T. Infelise, Major Paul H. Blackwell, Jr., and Major Jeffrey C. Lindquist.

Before LEONARD, JAMES, and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JAMES, Judge:

Airman First Class Korda was convicted of desertion.[1] The principal evidence of the required intent to remain away from his place of duty permanently was a note that was found in Airman Korda's apartment. On appeal, Airman Korda argues that the military judge erred when he denied the defense motion to suppress the note. We disagree and affirm the findings and sentence.

## I. FACTS

We adopt the following findings of fact entered by the military judge:

One. On 15 May 1991, the accused, Airman Korda, failed to report for work ... at Minot Air Force Base, North Dakota. This was reported to the first sergeant, Senior Master Sergeant Laymon.

Two. ... Sergeant Laymon, within the previous two weeks, had: one, counselled the accused; two, consulted with the mental health; and, three, on the day in question insured that the accused was escorted by another military member because Airman First Class Korda had [made comments concerning suicide].

As a result, ... Sergeant Laymon was concerned on 15 May 1991 that the accused may have attempted suicide. Therefore, [he] called Signal Management Corporation, managers of the apartment complex that the accused lived in, and asked them to check on the accused, that is, to ascertain whether or not he was in his apartment and to insure that he was okay.

Three. Mr. Steve Coffin, a maintenance employee with Signal Management, entered the apartment looking for Airman ... Korda. On not finding the accused, he found in plain view[2] a suicide note, the accused's military identification card, and numerous other cards that one would normally carry in a wallet.

Four. While on the premises Mr. Coffin called ... Sergeant Laymon and reported the results.... Sergeant Laymon asked Mr. Coffin to turn the note and the cards over to the Air Force, and Mr. Coffin indicated that he would do that.

Five. Mr. Coffin left the accused's apartment. Upon the arrival of [Master] Sergeant Barber and one other enlisted member, the three individuals reentered the apartment, and the note and cards were [seized by the military members].

These findings are amply supported by the record. *See United States v. Middleton,* 10 M.J. 123, 133 (C.M.A.1981); *see also United States v. Cole,* 31 M.J. 270 (C.M.A. 1990).

We find it necessary to make the following additional findings of fact:

1. Sergeant Barber reported Airman Korda's absence to Sergeant Laymon. Before notifying Sergeant Laymon, Sergeant Barber telephoned Airman Korda's

---

1. He was found guilty of a violation of Article 85, UCMJ, 10 U.S.C. § 885 (1988). He was sentenced to be discharged from the service with a bad-conduct discharge, to be confined for 2 months, to forfeit $200 pay per month for 2 months, and to be reduced to E-1. The convening authority approved the adjudged sentence.

2. We take the military judge's finding that the note was "in plain view" as a finding of fact only, showing the note to be in the open, not concealed.

off-base apartment but did not receive an answer.

2. About 9 days before he failed to report for work, Airman Korda said he guessed that suicide was his only way to get out of the Air Force. Sergeant Laymon knew that Airman Korda had previously asked to be separated from the Air Force. Without talking with Airman Korda, a psychiatrist from mental health told Sergeant Laymon that he did not think Airman Korda was a suicide threat. Sergeant Laymon had been involved with another airman who "flipped out" after the same mental health officer said he was fine.

3. Sergeant Laymon specifically told one of the landlord's employees that Airman Korda might have killed himself.

4. Airman Korda's apartment was locked.

5. Mr. Coffin found the note, identification card, and other items on top of a computer stand as he was leaving the apartment. The cards were stacked on top of the note, with the identification card on top. The note was visible, and the cards covered only the center of the writing.

6. Mr. Coffin told Sergeant Laymon that Airman Korda was gone and had left the Air Force a note. Mr. Coffin began reading the letter to Sergeant Laymon. The letter begins as follows:

14 May 1991

Dear Sirs:

This was my last resort. In a drunken stupor I decided t[o] fuck it. This is no longer worth it.

Sergeant Laymon cut him off at some point after hearing the words "drunken stupor."

7. When Mr. Coffin left the apartment after talking with Sergeant Laymon, Mr. Coffin locked the door.

8. Sergeant Laymon wanted the note to help him find Airman Korda. Sergeant Laymon also thought that Airman Korda's restricted area badge might have been left with his identification card. He wanted these items because of his fear that they could fall into someone else's hands.

9. Sergeant Laymon sent Sergeant Barber to retrieve the note and other items.[3]

10. Airman Korda's rent was paid through the end of the month.

11. On 26 May 1991, Airman Korda turned himself in to the security police at Minot Air Force Base.

We can now draw further inferences of fact from the foregoing findings. We infer from the location of the cards on the letter that Mr. Coffin was able to read the first three sentences of Airman Korda's note without disturbing the cards that were on top of it. We infer from the language of the first three sentences of the note and Mr. Coffin's purpose for entering the apartment that he moved the cards and read the entire note because he thought it might be a suicide note. We infer from the portion of the note that Mr. Coffin read to Sergeant Laymon and from Sergeant Laymon's concern for Airman Korda that Sergeant Laymon believed the note was a suicide note when he sent Sergeant Barber to retrieve it.[4] We infer from Sergeant Laymon's desire to find Airman Korda and his fear that Airman Korda had attempted or was likely to attempt suicide that his primary purpose for wanting the note was to help determine whether Airman Korda had attempted or was likely to attempt suicide.

■ In a pretrial motion, Airman Korda objected to the note under the authority of the Fourth Amendment and Military Rule of Evidence 311(c) as a product of an illegal search. The military judge concluded: (1) exigent circumstances justified the first entry; (2) Mr. Coffin saw the note in plain

---

3. Airman Korda's military identification card and the other items seized from his apartment were not objected to at trial. Absent a finding of plain error, any objection to the remaining evidence seized from the apartment was waived at trial. R.C.M. 905(e); Mil.R.Evid. 311(d)(2)(A).

4. When Sergeant Laymon later read the whole note, it only strengthened his fear that Airman Korda had attempted suicide or was likely to do so. This post hoc behavior is consistent with Sergeant Laymon's fear before Sergeant Barber got the note and lends credence to it.

view and lawfully seized it as evidence of a crime;[5] and (3) the second entry was merely a continuation of the first entry. He also concluded, in the alternative, that the Air Force would have inevitably acquired the note through other means. Accordingly, he denied the defense motion.

## II. ANALYSIS

■ The Fourth Amendment and Military Rule of Evidence 311 protect service members from unreasonable governmental searches and seizures. Under Military Rule of Evidence 311(e)(1), the government has the burden of proving by a preponderance of the evidence either that the note was not the product of an unlawful search and seizure or that it would have been inevitably discovered. We will review de novo the issue whether emergency circumstances justified the warrantless entries and seizure of the note. *See United States v. Figueroa*, 35 M.J. 54, 57 (C.M.A.1992) (Wiss, J., concurring in the result); *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir.1992); *United States v. Stewart*, 867 F.2d 581 (10th Cir.1989); *United States v. Echegoyen*, 799 F.2d 1271 (9th Cir.1986); S. Childress & M. Davis, 2 *Federal Standards of Review* § 11.11 n. 11 (1992).

■ Mr. Coffin's entry into Airman Korda's apartment was a search within the scope of the Fourth Amendment and Military Rule of Evidence 311. The facts clearly show that Airman Korda maintained a reasonable expectation of privacy in his apartment, and that Mr. Coffin's entry into the apartment was instigated by Sergeant Laymon for an official (i.e., not private) purpose. Mil.R.Evid. 311(a)(2), (c)(1).

■ We will now examine the military judge's conclusion that emergency circumstances justified the warrantless entry.

In emergency circumstances to save life or for a related purpose, a search may be conducted of persons or property in a good faith effort to render immediate medical aid, to obtain information that will assist in the rendering of such aid, or to prevent immediate or ongoing personal injury.

Mil.R.Evid. 314(i). The issue is not whether there was an actual emergency but whether Sergeant Laymon reasonably believed that an emergency existed at the time that he requested the initial entry. *United States v. Muniz*, 23 M.J. 201, 208 (C.M.A.1987); *United States v. Gammon*, 16 M.J. 646, 648 (A.F.C.M.R.1983). Thus, the scope of our review is all the facts and circumstances that were available to Sergeant Laymon at the time he requested the entry. We agree with the military judge's conclusion that Sergeant Laymon "had an honest, good faith belief that the accused may have injured or killed himself," and we find it to have been reasonable. Sergeant Laymon's perception that an emergency existed justified the first entry and search of the apartment, and Mr. Coffin's reading of the note did not exceed his justifiable purpose for entry. The fact that Airman Korda was not found in the apartment did not abate the emergency, for Airman Korda might simply have been equally suicidal at some other place. Discovery of the note could have only increased Sergeant Laymon's and Mr. Coffin's concern that Airman Korda had attempted suicide or was likely to do so.

■ While the government's agent lawfully entered Airman Korda's apartment and viewed the note, he did not maintain possession of the evidence. The military judge concluded that the note was admissible under a continuation theory, but we decline to uphold his ruling under that rationale.[6] We also disagree with the mili-

---

5. The military judge did not state what crime. Attempted suicide may not be a crime under the UCMJ. *See generally United States v. Johnson*, 26 M.J. 415 (C.M.A.1988); *United States v. Walker*, 20 C.M.R. 931 (A.F.B.R.1955); *United States v. Ramsey*, 35 M.J. 733 (A.C.M.R.1992).

6. The military judge gave no authority for his conclusion. Appellate government counsel cited only *Walker v. State*, 483 So.2d 791, 794–95

(Fla.App. 1 Dist.1986), *rev. denied*, 492 So.2d 1336 (Fla.1986). Our research found little more. *See, e.g., Cleaver v. Superior Court*, 24 Cal.3d 297, 594 P.2d 984, 155 Cal.Rptr. 559 (1979); *People v. Boragno*, 232 Cal.App.3d 378, 283 Cal.Rptr. 452 (Cal.App. 5 Dist.1991); *People v. Amaya*, 93 Cal.App.3d 424, 155 Cal.Rptr. 783 (Cal.App. 3 Dist.1979). The only federal authority dealt with an administrative search. *See*

tary judge's conclusion that the note would have been inevitably acquired.[7]

However, there was an alternative basis for the admission of the note, *see United States v. Alexander*, 32 M.J. 664, 667 (A.F.C.M.R.1991), *aff'd*, 34 M.J. 121 (C.M.A.1992), and that is sufficient. We will approach this issue by treating the second entry as a separate search. We conclude that the emergency also justified this entry.

 Sergeant Laymon's perceptions remain the key. Despite the government's concession [8] that the emergency justification ended when Airman Korda was not found in the apartment, we find that Sergeant Laymon's decision to send Sergeant Barber to get the note was a "good faith effort ... to obtain information that [would] assist" in providing aid to Airman Korda or preventing his suicide. Mil. R.Evid. 314(i). Rather than ending the emergency, Mr. Coffin's observations strengthened Sergeant Laymon's reasonable belief that he needed to find Airman Korda immediately. Sergeant Laymon believed that the "suicide" note would provide him with information that would lead him to an injured or despondent Airman Korda. We acknowledge that Mr. Coffin could have read the entire note to Sergeant Laymon over the telephone, but that does not make Sergeant Laymon's belief that he needed possession of the note unreasonable. It was reasonable for Sergeant Laymon to believe the "suicide" note could have provided a co-worker, acquaintance, or psychiatrist with a clue to Airman Korda's location. We emphasize that Sergeant Laymon's primary purpose in locating Airman Korda was to determine whether he had attempted suicide or was likely to do so. There is no evidence that Sergeant Laymon had any interest in or concern about a criminal investigation of an unauthorized absence.

The reasonableness of Sergeant Laymon's concern for Airman Korda's life makes the belief that possession of the note could help prevent his death equally reasonable. Thus, we conclude that the second entry and the seizure were justified by the emergency circumstances.

The findings and sentence are correct in law and fact. Accordingly, the findings of guilty and sentence are

AFFIRMED.

Senior Judge LEONARD and Judge JOHNSON concur.

*Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d. 486 (1978) (upheld reentry as a continuation of an attempt to determine the cause of a fire). *But see Michigan v. Clifford,* 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d. 477 (1984) (reentry into a damaged home was not a continuation of an earlier search because the authorities had left the scene without beginning an investigation into the cause of the fire). An application of this amorphous authority to the facts of this case does not justify the admission of the note.

7. The inevitable discovery doctrine must be applied carefully and narrowly. *United States v. Chick,* 30 M.J. 658, 660 (A.F.C.M.R.1990), *pet. denied,* 31 M.J. 436 (C.M.A.1990); *United States v. Tallon,* 28 M.J. 635, 639 (A.F.C.M.R.1989); *United States v. Haye,* 25 M.J. 849, 852 (A.F.C.M.R.1988), *rev'd on other grounds,* 29 M.J. 213 (C.M.A.1989). As argued by the trial defense counsel, the government did not present any evidence to show how the government *would* have obtained the note. Likewise, the military judge did not explain how the government would have acquired the evidence. While the trial counsel argued that the government *could* have obtained a search warrant, he did not present any evidence of an intent to get a warrant or a procedure that would reasonably lead to such an intent. "[I]nevitable discovery ... focuses on demonstrated historical facts capable of ready verification or impeachment and does not require a departure from the usual burden of proof at suppression hearings." *Nix v. Williams,* 467 U.S. 431, 444 n. 5, 104 S.Ct. 2501, 2509 n. 5, 81 L.Ed.2d 377, 388 n. 5 (1984). Sergeant Laymon testified that he never thought of getting a warrant. There is no evidence of any involvement by criminal investigators prior to Airman Korda's return. Even the transmittal form, AF Form 65, is blank in the section where reports of investigations are listed.

8. We are not bound by the government's concession. *United States v. McNamara,* 7 U.S.C.M.A. 575, 23 C.M.R. 39 (1957).