**UNITED STATES**

v.

**Staff Sergeant Anthony J. WILLIAMS, United States Air Force.**

ACM 33034.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 30 Aug. 1997.

Decided 28 Dec. 2000.

Appellate Counsel for Appellant: Captain Karen L. Hecker (argued), Colonel Douglas H. Kohrt, Lieutenant Colonel Timothy W. Murphy, and Major Robin S. Wink.

Appellate Counsel for the United States: Captain Suzanne Sumner (argued), Colonel Anthony P. Dattilo, Colonel Michael J. Breslin, Lieutenant Colonel Ronald A. Rodgers, and Major Bryan T. Wheeler.

Before YOUNG, Chief Judge, STARR, and ROBERTS, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Chief Judge:

Court members convicted the appellant, contrary to his pleas, of wrongfully using, possessing, and distributing cocaine. Article 112a, UCMJ, 10 U.S.C. § 912a. The convening authority approved the sentence as adjudged-a bad-conduct discharge, confinement for 18 months, and reduction to E–1. The appellant asserts three errors: (1) The military judge erred by failing to suppress the results of a urinalysis; (2) The findings and sentence should be set aside due to excessive delay in post-trial processing of the case; and (3) The staff judge advocate's recommendation (SJAR) and the convening authority's action are invalid because the recommendation was completed and served on the appellant prior to authentication of the record of trial. We heard oral argument on the first issue at the United States Air Force Academy on 17 October 2000. We set aside the appellant's conviction for wrongfully using cocaine and reassess the sentence.

### I. Denial of Suppression Motion

#### A. Facts

On 18 October 1996, the appellant was arrested and confined in the local jail by police officers in Bossier City, Louisiana. On 19 October, an agent of the Air Force Office of Special Investigations (AFOSI) notified the appellant's first sergeant, Master Sergeant (MSgt) Jackson, that the appellant had been arrested for possession of crack cocaine at a crack house. MSgt Jackson notified Lieutenant Colonel (Lt Col) Eaves, the commander, of the appellant's arrest. Lt Col Eaves telephoned the on-call judge advocate to discuss placing the appellant in pretrial confinement upon his release from civilian custody. Despite the judge advocate's advice to the contrary, Lt Col Eaves decided to place the appellant in pretrial confinement because she did not know him well and she feared for his safety. The appellant was transferred from civilian custody to pretrial confinement on 21 October and, as part of his in-processing at the military confinement facility, was required to provide a urine specimen for drug testing. The specimen tested positive for cocaine. The following day, the

base staff judge advocate convinced Lt Col Eaves to release the appellant. The appellant was released on 23 October.

At trial, the appellant moved to receive sentence credit for illegal pretrial confinement and to suppress the urinalysis results. He asserted that Lt Col Eaves did not have a reasonable belief that confinement was required by the circumstances and, therefore, abused her discretion by ordering him into confinement. The appellant further argued to suppress the results of the urinalysis as the fruit of that illegal pretrial confinement. The military judge ruled that Lt Col Eaves abused her discretion by finding a reasonable belief that pretrial confinement was required by the circumstances and by failing to consider lesser forms of restraint. As a result, the military judge granted the appellant 27–days' credit for the 3 days he spent in illegal pretrial confinement.

Describing it as a "close call," the military judge denied the motion to suppress. He found that Lt Col Eaves held no ill will toward the appellant, that she was not trying to avoid any requirement of the law, and that the pretrial confinement was not a subterfuge for obtaining a urine sample from the appellant. Without further explanation, the military judge stated that his decision was consistent with Judge Cox's concurring opinion in *United States v. Sharrock*, 32 M.J. 326, 333–34 (C.M.A.1991). The appellant alleges the military judge erred and asks this Court to set aside the appellant's conviction for wrongful use of cocaine.

#### B. Law

An accused may move to suppress admission of evidence obtained as a result of illegal pretrial confinement under Rule for Courts–Martial (R.C.M.) 905(b)(3). *See Sharrock*, 32 M.J. at 330 (Sullivan, J.). We review a military judge's ruling on a motion to suppress evidence for an abuse of discretion. *United States v. Ayala*, 43 M.J. 296, 298 (1995). Although we are authorized to find facts under Article 66(c), 10 U.S.C. § 866(c), we normally defer to the military judge unless his findings are clearly erroneous. *See United States v. Vaughters*, 42 M.J. 564, 566 (A.F.Ct.Crim.App.1995), *aff'd*, 44

M.J. 377 (1996). We review his conclusions of law de novo. *Ayala,* 43 M.J. at 298.

Evidence obtained as a result of an unlawful search or seizure made by a government agent is generally inadmissible against an accused who had a reasonable expectation of privacy in the person or place searched and who makes a timely motion to suppress. Mil.R.Evid. 311(a). A search or seizure is unlawful if it was conducted by military personnel in violation of the Constitution, Mil. R.Evid. 312–317, or an Act of Congress applicable to courts-martial that requires exclusion. Mil.R.Evid. 311(c)(1). A military judge may admit evidence derived from an unlawful search, seizure, or apprehension if he "finds by a preponderance of the evidence ... that the evidence was obtained by officials who reasonably and with good faith relied on the issuance of an authorization to search, seize, or apprehend." Mil.R.Evid. 311(e)(2). *See Manual for Courts–Martial, United States (MCM),* A22–18 (1995 ed.). In order to find good faith reliance, the military judge must find, by a preponderance of the evidence, each part of the following test:

(A) The search or seizure resulted from an authorization to search, seize, or apprehend issued by an individual competent to issue the authorization under Mil.R.Evid. 315(d) ...;

(B) The individual issuing the authorization ... had a substantial basis for determining the existence of probable cause; and

(C) The officials seeking and executing the authorization ... reasonably and with good faith relied on the issuance of the authorization.... Good faith shall be determined on an objective standard.

Mil.R.Evid. 311(b)(3).

## C. Discussion

The military judge and the appellee base the admission of the urinalysis on the Court of Military Appeals' decision in *Sharrock.* Sharrock had been punished three times under Article 15, UCMJ, 10 U.S.C. § 815, for drunk driving, a 5–day absence (AWOL), and failure to go to his place of duty. His unit was processing his discharge action, but he became impatient. He cashed four checks on a closed account at the base exchange in order to buy presents and finance his flight from the base. He thought better of the plan and confessed to his first sergeant that he had a drug problem and had intended to go AWOL. Approximately a month later, after returning money and merchandise to the exchange and confessing to agents of the AFOSI, Sharrock was notified that charges had been preferred against him. He was immediately ordered into pretrial confinement. When he was being processed into the confinement facility, his personal effects were inventoried. The appellant had in his possession a small gold spoon and some methamphetamine. Based on this evidence, the base commander authorized a seizure of a specimen of the appellant's urine.

Sharrock claimed his pretrial confinement was unlawful and moved to suppress the results of tests conducted on the urine specimen. The military judge found the pretrial confinement to be lawful and denied the motion. This Court held the pretrial confinement was unlawful and the test results should have been suppressed. *Sharrock,* 32 M.J. at 328. The Court of Military Appeals disagreed, but the three judges wrote separately. Chief Judge Sullivan agreed with the trial judge that the pretrial confinement and admission of the urinalysis results were both lawful.

Senior Judge Everett claimed it was within the discretion of the Air Force court under Article 66(c), 10 U.S.C. § 866(c), to find the pretrial confinement unlawful, but disagreed with the conclusion that Sharrock was entitled to suppression. He noted that

evidence is admissible when obtained during a routine inventory of the personal effects of someone who is being placed in confinement. *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). This principle may not apply when no probable cause exists to believe that the person being confined has committed a crime; but, in my view, the exclusionary rule may not be invoked merely because a commanding officer has erred in determining that "[c]onfinement is required by the circumstances."

...

In light of the role prescribed for the commander in making confinement decisions, evidence seized in an inventory incident to confinement should not be suppressed solely because a court later determines that confinement was not "required by the circumstances." Applying the exclusionary rule to such evidence will not deter commanders from making such errors or better assure that they have been "neutral and impartial" in their decisions on pretrial confinement. Of course, my logic assumes that the commanding officer, when ordering a suspect into confinement, is not using pretrial confinement as a subterfuge for searching the suspect or otherwise obtaining evidence from him; and nothing in the record here is at odds with this assumption.

*Sharrock,* 32 M.J. at 333 (Everett, S.J., concurring in part and dissenting in part) (footnotes omitted). In reaching this conclusion, Senior Judge Everett relied on the rationale of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), that "the exclusionary rule is designed primarily to deter police misconduct, rather than errors on the part of magistrates." *Sharrock,* 32 M.J. at 333. Of course, Senior Judge Everett expected that, like a magistrate, a commander making a pretrial confinement decision would be neutral and detached when ordering a suspect into pretrial confinement. *Id.*

Judge Cox agreed with Chief Judge Sullivan that the pretrial confinement was lawful, but also concurred with Senior Judge Everett that the Air Force court was within its discretion to find it unlawful. Relying on the good faith exception, and the fact that the commander could have had the appellant searched incident to apprehension, Judge Cox agreed that the urinalysis results were admissible. *Id.* at 334.

The appellant asserts that his case is distinguishable from *Sharrock,* and the good faith exception to the exclusionary rule does not apply, because Lt Col Eaves was not familiar with well-established principles of military law and disregarded the recommendations of both her first sergeant and the on-call judge advocate. *See United States v. Lopez,* 35 M.J. 35, 42 (C.M.A.1992). In *Lopez,* the military judge was faced with a motion to suppress evidence seized as a result of a commander's authorization. He admitted the evidence on the basis of the good faith exception. The Court of Military Appeals determined that the issue of probable cause to issue a search authorization was "very close," and upheld the military judge's finding that the good faith exception applied to the commander. The commander was neutral and detached and there was a substantial basis for finding probable cause.

The exclusionary rule is not constitutionally mandated for violations of the Fourth Amendment. Rather, it is a judicially created remedy designed to deter improper police conduct. *Leon,* 468 U.S. at 906, 104 S.Ct. 3405. Whether exclusion of the evidence is an appropriate remedy "must be resolved by weighing the costs and benefits of preventing the use in the prosecution's case in chief of inherently trustworthy tangible evidence obtained in reliance on a search warrant issued by a detached and neutral magistrate that ultimately is found to be defective." *Id.*

■ The seizure of the appellant's urine specimen, and its subsequent analysis, resulted from Lt Col Eaves' order to place the appellant into pretrial confinement. The appellant claims Lt Col Eaves was not competent to order pretrial confinement because she was not the neutral and detached magistrate envisioned by Mil.R.Evid. 315(d) and *Lopez. See MCM,* A22–18. Recognizing the difference between commanders and civilian magistrates, the drafters of Mil.R.Evid. 311(b)(3) anticipated that the good faith exception would apply only to commanders who were neutral and detached as defined in *United States v. Ezell,* 6 M.J. 307 (C.M.A. 1979). The drafters of the Military Rules of Evidence believed that whether a commander received training in search and seizure issues and whether she consulted with a judge advocate were important considerations in assessing the commander's neutrality. *MCM,* A22–18.

Whether Lt Col Eaves was neutral and detached is a difficult question. She did not have any bias against the appellant, and her

ordering him into pretrial confinement was not a subterfuge for a search. While she was trained in being a military magistrate, and had so acted, it was clear that she did not fully understand the standards she was required to apply. Although she did not follow the advice of the on-call judge advocate, she did consult him. We reject any notion that the commander is not neutral and detached merely because she refused to follow the judge advocate's advice. Commanders are chosen, and given authority to render decisions on search and seizure issues, because of their wisdom and judgment. There is no evidence that Lt Col Eaves' refusal to follow the judge advocate's advice was other than the exercise of her own best judgment that the appellant should be confined. We expect commanders to exercise their own independent judgment when performing their duties. Judge advocates are advisors on such issues, not the decision-makers. If commanders were forced to follow the recommendations of judge advocates, there would be no reason for the commander to make the decision. Under all the facts and circumstances of this case, we conclude that Lt Col Eaves was neutral and detached and, therefore, competent to order the appellant's apprehension and pretrial confinement. Mil.R.Evid. 315(d)(1).

To apprehend the appellant, Lt Col Eaves had to have probable cause-reasonable grounds to believe that the appellant committed an offense triable by court-martial. R.C.M. 302(c). Based on the report of her first sergeant that the appellant had been arrested by civilian law enforcement officials for possession of cocaine at a crack house, we agree with the military judge's decision that Lt Col Eaves had reasonable grounds to believe that the appellant had committed an offense triable by court-martial.

■ To order the appellant into pretrial confinement, Lt Col Eaves had to have reasonable grounds to believe the appellant committed an offense triable by court-martial and that pretrial confinement was required by the circumstances. R.C.M. 304(c). Whether pretrial confinement is required by the circumstances involves two separate determinations: (1) whether there is an ade-

quate basis for ordering the confinement; and (2) whether there is a need for the confinement as opposed to some lesser form of restraint. *United States v. Heard*, 3 M.J. 14, 20–21 (C.M.A.1977). Our superior court has recognized an adequate basis exists for pretrial confinement "to assure the presence of an accused at his trial" and to avoid "foreseeable future serious criminal misconduct of the accused, including any efforts at obstructing justice." *Id.* at 20. We concur with the military judge's conclusion that Lt Col Eaves did not have reasonable grounds to believe that pretrial confinement was required by the circumstances. She based her decision on her concerns for the appellant's safety and the fact that, since he was new to the squadron, she did not know him well. But, no evidence was presented to the military judge that supported a belief that the appellant was in danger, and it is hard to believe the squadron could not have devised some measures short of confinement to protect him. *See Berta v. United States*, 9 M.J. 390, 392 (C.M.A.1980) (mem). Furthermore, the commander's lack of knowledge of the individual is not a sufficient basis for pretrial confinement. If a commander does not know the individual well, it is incumbent upon her to investigate and determine whether that individual represents a risk of flight or to commit other serious offenses.

■ The good faith exception to the exclusionary rule recognizes that probable cause determinations are often difficult. Therefore, we should not suppress reliable evidence when the magistrate misses a close call. It makes no sense to penalize society when a trained commander or magistrate reaches a decision upon which reasonable judges could differ. To do so would hardly enhance the goals of the exclusionary rule-deterring police misconduct. But, in this case, it was not a close call. No *trained* commander or magistrate could reasonably believe this evidence was sufficient to establish, by a preponderance of the evidence, that incarceration was appropriate. *Cf. Lopez*, 35 M.J. at 42 (good faith exception not apply when affidavit is so lacking in indicia of probable cause as to render official belief in *its* existence entirely unreasonable). While Lt

Col Eaves' unwillingness to follow the judge advocate's advice did not render her incompetent (as not neutral and detached) to decide the issue, it certainly weighs against her in determining whether she had a substantial basis to reach the decision she did.

Law enforcement agents did not seek the appellant's pretrial confinement. They merely incarcerated him pursuant to the commander's order and carried out the preincarceration procedures required by regulation. Thus, suppression of the urinalysis results will do nothing to deter police misconduct, for there was none.

Despite our conclusion that law enforcement agents did nothing wrong and will not be deterred by suppression of the evidence, we find that the good faith exception to the exclusionary rule does not apply in this case. Lt Col Eaves had no substantial basis for concluding that pretrial confinement was appropriate or that it was required by the circumstances. Therefore, her decision does not meet the requirements of Mil.R.Evid. 311(b)(3).

■ The appellee argues that we could also sustain the military judge's admission of the urinalysis results as a search incident to apprehension, a probable cause search pursuant to the commander's authorization, or because the evidence inevitably would have been discovered. A military member who is lawfully apprehended may be searched. Mil. R.Evid. 314(g). The purpose of such a search is to protect the apprehending law enforcement agents from bodily harm and to prevent the person apprehended from destroying evidence of a crime. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); 2 John Wesley Hall, *Search and Seizure* § 16.1 (3d ed.2000). While the evidence of illegal drugs contained within the appellant's body was perishable, it was not destructible. There was no affirmative action the appellant could have taken to destroy the evidence while he was being apprehended. Therefore, admission of the urinalysis results cannot be sustained as incident to apprehension.

The appellee also asserts Lt Col Eaves had probable cause to order a search of the appellant and that she did in fact do so. Lt Col

Eaves testified that she was told the appellant was arrested by the Bossier City police for use and possession of cocaine and that she wanted the appellant to submit a urine specimen for testing. She claims she discussed this with her first sergeant, although she admitted that she did not give the first sergeant an order to get the specimen. Of course, the first sergeant testified that Lt Col Eaves never told her to get a urine specimen from the appellant. The military judge did not find that Lt Col Eaves issued an authorization to search the appellant's urine for drugs of abuse. Under the totality of the circumstances, we are unwilling to find that she did so.

The appellee suggests the urinalysis results would be admissible because "the evidence would have been obtained even if such unlawful search or seizure had not been made." Mil.R.Evid. 311(b)(2). The so-called inevitable discovery doctrine "is in reality an extrapolation from the independent source doctrine: *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." *Murray v. United States*, 487 U.S. 533, 539, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). The prosecution has the burden of establishing by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means. Mil. R.Evid. 311(e)(2); *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). This rule "applies even in the absence of a prior or parallel investigation." *United States v. Owens*, 51 M.J. 204, 211 (1999).

In the past, we have applied the inevitable discovery doctrine "carefully and narrowly." *United States v. Haye*, 25 M.J. 849, 852 (A.F.C.M.R.1988), *rev'd on other grounds*, 29 M.J. 213 (C.M.A.1989). *Accord United States v. Chick*, 30 M.J. 658 (A.F.C.M.R. 1990). For, unless courts use "a surgeon's scalpel and not a meat axe" in applying the doctrine, it eviscerates the exclusionary rule. 5 Wayne R. LaFave, *Search and Seizure* § 11.4a (3d ed.1996).

■ Before applying the inevitable discovery doctrine, we must be convinced by a preponderance of the evidence that the same evidence would have been obtained by some lawful means. In this case, we must be convinced that (1) Lt Col Eaves, or some other lawful authority, would have ordered a seizure of the appellant's urine for testing; and (2) the test results would have revealed that the appellant used cocaine. At trial, the prosecution raised inevitable discovery as an alternate grounds for admitting the urinalysis results. However, the military judge did not refer to inevitable discovery in his ruling.

■ Our review of the evidence shows a possible grounds for application of the inevitable discovery doctrine. Lt Col Eaves testified that she was concerned with procuring a urine specimen for testing from the appellant. She claimed she told MSgt Jackson of her interest, but did not specifically order her to get the specimen. MSgt Jackson, on the other hand, insisted that Lt Col Eaves never instructed her to get a urine specimen. She testified that, after the urine specimen had been collected because of the appellant's pretrial confinement, Lt Col Eaves asked if blood or urine specimens had been taken. If Lt Col Eaves' testimony had been clearer and she had not been so confused about search, seizure, and pretrial confinement issues, we might have found the evidence sufficient to establish by a preponderance of the evidence that she would have ordered a probable cause search of the appellant's urine. However, based on the record we have before us, we are unwilling to do so.

Having found no valid basis for the admission of the urinalysis results, we conclude the military judge abused his discretion in admitting them. Thus, we must test for prejudice. Article 59(a), UCMJ, 10 U.S.C. § 859(a). As the error in this case relates to a search derived from an illegal seizure under the Fourth Amendment, it is of constitutional magnitude. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Bins,* 43 M.J. 79, 86 (1995).

■ The meaning of "harmless beyond a reasonable doubt" does not appear to be a fixed concept, at least at the Supreme Court. In *Chapman,* the Supreme Court placed the burden on the prosecution to show that there was no "reasonable possibility that the evidence complained of *might have contributed to the conviction." Chapman,* 386 U.S. at 23, 87 S.Ct. 824 (quoting *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)) (emphasis added); *Id.* at 26, 87 S.Ct. 824. Two years later, the Supreme Court "changed the focus of the rule by finding the evidence of guilt that was properly before the court so overwhelming as to make the admission of the inadmissible evidence harmless beyond a reasonable doubt." 2 Steven A. Childress & Martha S. Davis, *Federal Standards of Review* § 7.03 (3d ed.1999) (citing *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)). "Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact ... on the minds of an average jury." *Harrington,* 395 U.S. at 254, 89 S.Ct. 1726. *Accord Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). *But see* 2 Childress § 7.03 (claiming *Schneble* shifted burden of proof). Regardless, the United States Court of Appeals for the Armed Forces seems to have consistently defined the harmless beyond a reasonable doubt test as "whether the evidence may reasonably have had an effect on the decision." *United States v. George,* 52 M.J. 259, 261 (2000) (citing *Bins,* 43 M.J. at 86).

■ Whether the urinalysis results "may reasonably have had an effect on the decision" is a close case. An undercover police officer saw the appellant inside an apartment in which a considerable quantity of cocaine was available. The appellant was arrested after exiting the apartment and dropping cocaine on the ground. Two individuals, testified that they used cocaine with the appellant over several hours. Clearly, the court members found these witnesses credible because they convicted the appellant of distributing cocaine based on their testimony. Under these circumstances, we have no doubt that the appellant would have been convicted

of wrongful use of drugs without admission of the urinalysis results. On the other hand, it doesn't take much to "reasonably have had an effect on the decision." After careful consideration, we are not convinced that the urinalysis results, along with the lengthy expert testimony concerning the results and the testing procedures did not reasonably have an effect on the court's decision. Furthermore, we see little to be gained by prolonging appellate consideration of this issue. The more serious offense is the distribution of cocaine. For that alone, the appellant could have been sentenced to confinement for 15 years. Therefore, we set aside the appellant's conviction for wrongfully using cocaine (Specification 2 of Additional Charge I).

 Although in his brief the appellant did not ask us to do so, pursuant to our duties under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we also considered whether admission of the urinalysis results tainted the appellant's conviction on the other specifications. After the court members asked if use of cocaine implied possession, the military judge instructed them, in accordance with the appellant's wishes, that each offense must stand on its own and "proof of one offense carries with it no inference that the accused is guilty of any other offense." In the absence of clear and convincing evidence to the contrary, members are presumed to follow the military judge's instructions. *See United States v. Jenkins*, 54 M.J. 12, 20 (2000) (citing *United States v. Garrett*, 24 M.J. 413, 418 (C.M.A.1987), (citing *United States v. Ricketts*, 1 M.J. 78 (C.M.A.1975))). We are convinced that the admission of the urinalysis results did not reasonably have an effect on the court's decision on the other specifications.

## II. Excessive Delay in Post–Trial Processing

The appellant next argues that the 110 days it took to process his case—from announcement of the sentence until action by the convening authority—was excessive and, therefore, the findings and sentence should be set aside. The appellant was sentenced on 30 August 1997. It appears from the record of trial that the court reporter completed transcribing and assembling the record of trial on or about 24 November 1997, some 84 days after trial. That included several days of sick leave and two weeks of previously approved annual leave. The appellant and his counsel received copies of the record of trial and the SJAR on 25 November 1997. That recommendation afforded the appellant 10 days, with the possibility of a 20 day extension, to submit matters to the convening authority. The appellant submitted his post-trial matters on 12 December 1997, some 17 days after he received the record of trial and the SJAR, and some 14 days after the record of trial was authenticated (see part III). The convening authority took action on the appellant's case on 18 December 1997.

The appellant served his sentence to confinement at Barksdale Air Force Base until he was transferred to the Naval Consolidated Brig at Charleston, South Carolina, on 15 January 1998. He was first considered for parole on 12 February 1998. In a 16 March 1998 letter, The Air Force Clemency and Parole Board denied the appellant parole based on his need: (1) to fully appreciate his drug abuse problems; (2) to participate in rehabilitation programs; (3) to demonstrate readiness to handle the responsibilities of parole; and (4) to serve more time in confinement as a deterrent. The appellant appealed this decision on 13 April 1998. On 15 June 1998, the appellant received a certificate of parole effective "as soon as possible." Nine days later, on 24 June 1998, the appellant submitted his assignment of errors to this Court.

 The appellant essentially argues that, had the post-trial processing of his case and subsequent transfer to a Naval Consolidated Brig proceeded faster, he would have been more likely to receive earlier parole. Inordinate post-trial delay may warrant sentence relief if an appellant can demonstrate substantial prejudice flowing from that delay. *United States v. Bell*, 46 M.J. 351, 353 (1997). The appellant never complained to the staff judge advocate about the delay and failed to demonstrate that the 110 days it took to process his 6 volume, 748 page, record of trial was inordinate. The appellant also

failed to demonstrate that faster post-trial processing of his case would have actually resulted in earlier parole.

### III. Delayed Service of SJAR

■ Finally, the appellant argues that the SJAR and the convening authority's action were invalid because the SJAR was served on the appellant prior to authentication of the record of trial. Citing two Army cases, *United States v. Batiste*, 35 M.J. 742 (A.C.M.R.1992) and *United States v. Roach*, 39 C.M.R. 739, 1968 WL 5185 (A.B.R.1968), the appellant asserts that because the SJAR "was not based on a properly authenticated record, the recommendation is invalid, as a matter of law"; and, absent a valid recommendation, the action is not valid. Of course, the two cited cases do not stand for the proposition asserted by the defense. In those cases, the action was set aside because the convening authority took action before the record of trial was authenticated.

The SJAR and the record of trial were served on the appellant on 25 November 1997. The military judge authenticated the record on 28 November 1997 after making minor changes. The appellant submitted a lengthy post-trial package to the convening authority on 12 December 1997 in which the defense specifically stated there were no objections to the SJAR. The convening authority issued the action on 18 December 1997.

The appellant had full opportunity to voice his objections to this procedure in his response to the SJAR, but failed to do so. *See United States v. Goode*, 1 M.J. 3, 6 (C.M.A. 1975) (failure to challenge or comment on SJAR normally deemed waiver of issue). At no time has the appellant alleged that the record of trial was inaccurate or that he has been prejudiced in any way. As the military judge made no substantive changes to the record of trial, we find the appellant was not prejudiced. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

### IV. Conclusion

Based on our decision to set aside Specification 2 of Additional Charge I, we must determine whether to reassess the sentence or return the case for a rehearing on sentence. *United States v. Jones*, 39 M.J. 315 (C.M.A.1994), *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990). We are confident that we can determine the sentence the members would have adjudged, absent the wrongful use of cocaine specification we set aside. We approve only so much of the sentence as provides for a bad-conduct discharge, confinement for 14 months, and reduction to E–1. We have given individualized consideration to the seriousness of the remaining offenses, the character and military performance of the appellant, and all circumstances documented in the record of trial. *United States v. Snelling*, 14 M.J. 267 (C.M.A.1982).

The modified findings of guilty and the reassessed sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.