UNITED STATES, Appellee

v.

Donnie C. RAMSEY, Specialist
U.S. Army, Appellant.

No. 93–0080.
CMR No. 9101640.

U.S. Court of Military Appeals.

Argued Dec. 15, 1993.

Decided Aug. 17, 1994.

For Appellant: *Captain Teresa L. Norris* (argued); *Colonel Malcolm H. Squires, Jr., Lieutenant Colonel James H. Weise, Captain Robin N. Swope, Captain Robert Lane Carey* (on brief); *Major Fran W. Walterhouse.*

For Appellee: *Captain Kenneth G. Wilson* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Joseph A. Russelburg, Major Joseph C. Swetnam* (on brief).

*Opinion of the Court*

WISS, Judge:

At his general court-martial, appellant pleaded not guilty to a specification alleging malingering by self-inflicting injury in a hostile fire pay zone for the purpose of avoiding service as an enlisted person, in violation of Article 115, Uniform Code of Military Justice, 10 USC § 915. Under a pretrial agreement, however, he pleaded guilty to a lesser-included offense of intentional self-infliction of injury in a hostile fire pay zone thereby temporarily incapacitating himself from performing military duties, in violation of Article 134, UCMJ, 10 USC § 934. After accepting the pleas as provident, the military judge sentenced appellant to a bad-conduct discharge, confinement for 18 months, total forfeitures, and reduction to the lowest enlisted grade.

The convening authority approved these results except that he limited the forfeitures to $500.00 pay per month for 18 months, as he was obliged to do under the pretrial agreement. The Court of Military Review affirmed. 35 MJ 733 (1992).

On appellant's petition, this Court granted review of the following three issues:[1]

WHETHER APPELLANT'S PLEA TO SELF–INJURY WITHOUT INTENT TO AVOID SERVICE WAS IMPROVIDENT.

WHETHER APPELLANT'S ATTEMPTED SUICIDE IS A CRIME UNDER THE UNIFORM CODE OF MILITARY JUSTICE.

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY IMPROPERLY HOLDING THAT THE MAXIMUM SENTENCE INCLUDED CONFINEMENT FOR A PERIOD OF SEVEN YEARS.

Now, we hold that there is no merit to the first two issues; further, even if the military judge erred in computing the maximum period of confinement imposable for the offense of which appellant had been convicted, there is no fair risk that appellant suffered any prejudice from this error.

## I

### A

While deployed to Saudi Arabia during Operation Desert Shield/Desert Storm, appellant learned that he had contracted a venereal disease. Believing that he could have been exposed to this disease only through his wife who was then in Germany, he telephoned her and learned that she had not been faithful to him and, in fact, had considered abandoning their two young daughters.

Appellant then turned in his weapon to the unit armorer. He was so despondent over learning of his wife's intentions that his command feared he may be suicidal, but a chaplain talked to him and decided suicide was unlikely. In another phone call his wife disavowed her earlier intentions, and that made appellant feel better. Two weeks later appellant was reissued his weapon. One subsequent morning, while sitting on his cot and cleaning his rifle, appellant desperately decided "to end it all." He chambered a round of ammunition, placed the butt of the weapon on the ground with the barrel pointed at his shoulder, and pulled the trigger. The round entered his left shoulder and exited the top and back of his shoulder. Appellant was evacuated to a hospital in Germany and later, after recovery, was returned to Saudi Arabia.

### B

During an off-the-record conference convened under RCM 802, Manual for Courts–Martial, United States, 1984, counsel and the military judge addressed the issues of the elements of the pleaded offense and the maximum sentence available. Although "self-injury without intent to avoid service" is listed in the Manual as a lesser-included offense of malingering, see para. 41d(1), Part IV, there is no discussion in the Manual of this offense beyond that, as there is for other offenses that typically are prosecuted under Article 134. See paras. 61–113, Part IV, Manual, supra. As a consequence, the Manual offered the parties no specific guidance as to the elements of the offense or the maximum punishment that accompanies it. Cf. Drafters' Analysis of para. 40, Manual, supra at A21–95, citing United States v. Taylor, 17 USCMA 595, 38 CMR 393 (1968).

During trial, the military judge reported on the record that the parties had reached agreement on the elements as listed in an appellate exhibit but had not reached agreement on the maximum punishment. On the latter issue, the parties had submitted briefs to the military judge and there was, as well, extensive discussion of the question on the record, with reference to suggestions as to maximum confinement that apparently had been made during the conference that ranged from 4 months to 10 years, with several possible stops in between. See RCM 1003(c)(1)(B)(i), Manual, supra. The only alternatives that were considered on the record, though, were 10 years—on the supposition that appellant's offense was more closely analogous to malingering by intentional self-

---

1. Additionally, we granted review of a fourth issue that, since, has been resolved adversely to appellant's interests. See Weiss v. United States, —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994).

inflicted injury in a hostile fire pay zone with intent to avoid service—and one year—based on an analogy of appellant's offense to willful discharge of a firearm so as to endanger human life. *Compare* para. 40e(4) *with* para. 81e, Part IV.

In due course, the military judge ruled that appellant's crime was most closely analogous to malingering, so the maximum period of confinement would be 10 years. He reasoned that the essential aspects of malingering under these circumstances would include self-inflicted injury, an intent to avoid duty, and occurrence in a hostile fire pay zone; here, there was self-inflicted injury, and it occurred in a hostile fire pay zone.

After a continuance of about a month in order to permit a psychiatric evaluation of appellant at the judge's order, the parties returned to the courtroom, where the military judge announced that, on his own motion, he had "reconsidered" his ruling on the question of the maximum punishment, stating:

> Let me explain a couple of things. I went back through the transcript of the proceedings in this trial that we've had to date and have reviewed my ruling. I find nothing wrong with that ruling in law. There's a practical problem, and that is the problem that I'm addressing.
>
> The problem is this: While the particular portion of military rule of evidence [should be RCM] 1003(c)(1)(B)(i) suggested that in this type of situation that the maximum punishment would be related to the greater offense of intentional self-inflicted injury in a time of war or hostile fire pay— and that point was fairly strenuously argued by the Government, the fact of the matter is, that what we have is a lesser included offense. Without being too simplistic, lesser included suggests to me something lesser. Furthermore, while we talked about the fact that hostile fire pay was involved, there are actually a couple of different aspects to the situation that we have here. I have absolutely no authority for picking seven years other than the fact that it's less than the maximum punishment [for the offense] to which the accused

has been charged with. Yet I find it more than just the offense of intentional self-inflicted injury, and that's partly because of the war time hostile fire pay. Now, I will cover this during the providence inquiry when we get to this aspect, because obviously no one is in a position to cite what the maximum punishment is in this type of situation. I don't know. I would suggest that neither counsel knows and I would suggest that the case law is unavailable to indicate that. So I picked a date; it's not altogether arbitrary. The intent was to clearly delineate that it is a lesser punishment, and yet to separate it from some of the other lesser offenses that may apply here. I suppose ultimately if this matter is of import and is to be resolved, it will be resolved at the appellate level.

> I apologize, gentlemen. I hope this has not created a difficulty for anyone. But I think under my sense of fairness and my sense of logic, as it would apply to the rules, this is the appropriate ruling. So I have changed my ruling and instead of a ten-year offense we're looking at a seven-year offense.

Prior to the first ruling on the maximum sentence, the defense had indicated that appellant's decision to plead guilty under the pretrial agreement would not be affected by this decision, so the military judge at that point had proceeded to the providence inquiry. After the revised ruling on reconsideration, the defense reiterated the immateriality of that ruling on the decision to plead guilty.

### C

During the providence inquiry, the military judge advised appellant that the offense to which he had pleaded guilty was comprised of four elements: that appellant "intentionally inflicted injury upon" himself in a particular fashion; "that the act of self-injury was wrongful"; "that the act occurred in a hostile fire pay zone"; and "that, under the circumstances, the conduct … was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces."

Addressing certain language in these elements, the military judge advised appellant, "The word 'intentionally' as used in these circumstances and in this specification means that the act was done on purpose and not merely through carelessness, by accident or under good faith error of law." He continued:

You are advised that an act such as self-wounding is wrongful if done without authorization, actual or implied, and without the consent, permission or authorization of any person with the authority to authorize such conduct. *It must also be done with a criminal state of mind, meaning that at the time the act was done, you recognized and understood that it was unlawful.* Thus the act must not have been due to either negligence, under mistaken belief of right to do it, with lawful authority to do it, or authorized by apparent lawful superior orders.

(Emphasis added.)

Appellant affirmatively indicated that he understood this advice and admitted that it "described" what he did. He explained that

at that time when I did this I knew it was wrong, but at the time I just didn't know what to do. It just seemed that was the best way out, so I took it. But it hurt me, not only me but people around me. I know for one thing it killed the morale of my unit. It also made them have to work a little harder to try [to] fill the position that I was supposed to be filling. I didn't care for my life at that time but I realize now I was being quite selfish because my parents were still dependent on me, and my little girls. And I let myself and them down.

In due course, the military judge accepted the tendered pleas and entered findings of guilty.

II

In his first two issues, appellant challenges the basis of his conviction. First, he questions whether his pleas were provident in a certain respect; and second, he asks whether attempted suicide, which he asserts is the true nature of his act, even is a crime under the Uniform Code of Military Justice. Neither issue is meritorious.

A

■ Appellant's contradiction in this Court of his trial pleas focuses on the articulated element of the "wrongfulness" of his shooting himself. Though he submits that it is uncertain what *are* the elements of this offense in light of the omission of any substantive mention of it in the Manual, he accepts for purposes of this appeal that "wrongfulness" is one of them. Pointing to his statement during the providence inquiry just quoted, however, appellant asserts that he acknowledged the "wrongfulness" of his act only in the sense of its immorality, not in the sense of its criminality.

In the full context of his quoted admission, however, that simply cannot fairly be claimed. Appellant did not merely admit that he "knew it was wrong" but was desperate and irrational. Instead, he further acknowledged, immediately after admitting that he knew his action was wrong, that he knew he had "killed the morale of" his unit and that the people in his unit had "to work a little harder to try [to] fill the position that [he] was supposed to be filling." In other words, appellant acknowledged that his act was "wrong" because "it hurt ... people around" him in certain ways, and he thereby fairly implied his recognition that his act was without any proper authority. That is more than immorality.[2]

2. We cannot pass this point without highlighting the confusion both at trial and on appeal concerning the elements of this offense. The military judge advised appellant that one of the elements was that the act was "wrongful," and the appellate exhibit that reflects the results of the RCM 802, Manual for Courts–Martial, United States, 1984, conference refers to "¶ 3–91, p. 3–187 BenBk." The reference apparently is to

paragraph 3–91, *Military Judges' Benchbook* at 3–187 (Dept. of the Army Pamphlet 27–9 (Change 3, 15 February 1989)). While an instruction on "wrongful" is discussed there, it is in connection with wrongful taking or withholding as an element of wrongful appropriation, which is considerably different from the "wrongful" nature of an act in the sense of general criminal mens rea. If something more than gen-

## B

■ Appellant's attack against the criminality of attempted suicide under the UCMJ is a strawman. First, appellant was not charged with or convicted of attempted suicide. Second, the criminality under Article 134 of the UCMJ of what *was* the subject of his conviction was settled definitively in *United States v. Taylor,* 17 USCMA at 596–97, 38 CMR at 394–95. Appellant's attempted suicide was not the substantive crime he faced; rather, his attempt to kill himself was the *basis* for his crime of self-inflicting an injury to the prejudice of good order and discipline. If attempted suicide for the purpose to avoid military duty may be a sufficient basis for a charge of malingering, *see United States v. Johnson,* 26 MJ 415 (CMA 1988), then attempted suicide without such purpose surely may be a sufficient basis for a charge of intentional self-infliction of injury to the prejudice of good order and discipline.

## III

■ The third issue concerns the correct maximum punishment for appellant's offense. As mentioned earlier, this crime is not specifically set out in the Uniform Code of Military Justice, and the only mention of it in the Manual is its listing as a lesser-included offense of malingering under Article 115 and in the Drafters' Analysis of paragraph 40 that cites *United States v. Taylor, supra.*[3] Accordingly, unlike most offenses prosecuted under Article 134, there is no maximum punishment for this crime specifically provided in Part IV of the Manual.

RCM 1003(c)(1)(B)(i) instructs:

For an offense not listed in Part IV of this Manual which is included in or closely related to an offense listed therein the *maximum punishment shall be that of the* offense listed; however, if an offense not listed is included in a listed offense and is closely related to another, or is equally closely related to two or more listed offenses, the maximum punishment shall be the same as the least severe of the listed offenses.

As between the Government's suggestion that appellant's crime was more closely analogous to malingering and appellant's contention that it was more closely analogous to wrongful discharge of a firearm so as to endanger human life, we agree with the military judge in his initial ruling. It would seem to make little difference *how* appellant inflicted his physical injury, the damage to the military is the same: His unit has lost his services, and the mission has been jeopardized proportionately. That was the social cost that appellant's act perpetrated, and that is the social cost principally addressed in malingering, as opposed to life-threatening discharge of a firearm. *Compare* para. 40c(1) *with* para. 81c, Part IV. This conclusion is buttressed further by the fact that, apart from the analogy between appellant's crime and malingering, the former is listed in the Manual as a lesser included offense of the latter. *See* RCM 1003(c)(1)(B)(i).

That dispute settled, the military judge remained troubled by the illogic of punishing self-injury that had the result of removing appellant from his unit in a hostile-fire pay zone with the same severity as self-injury *for the purpose* of accomplishing this result—the former being *lesser* included within the lat-

eral criminal mens rea is required, one would expect to find a similar requirement under malingering, since paragraph 40d(1) Part IV, Manual, *supra,* lists appellant's crime as a lesser-included offense of malingering; yet no such element appears for malingering, *see* para. 40b. The military judge's effort to define "wrongful" for appellant, set forth earlier in this opinion at 74 did anything except clarify this concept: In the context of this offense, it adds little to suggest that the act must have been done without authority, consent, or permission; without negligence; and with the recognition and knowledge that it was "unlawful."

3. As part of a proposed change to Part IV of the Manual that presently is pending public comment, a new paragraph 103a would be added that specifically would set forth elements and maximum punishments for the crime of "Self-injury without intent to avoid service" under Article 134, Uniform Code of Military Justice, 10 USC § 934. *See* 59 Fed.Reg. 17771 (April 14, 1994). If such an amendment eventually *is* signed by the President, issues like those presented in this case will not arise in the future.

ter. That apparent illogic aside, however, we are constrained to agree with the Court of Military Review in concluding that the military judge not only lacked authority for his ruling on reconsideration in which he arbitrarily picked some lesser figure than the 10 years authorized for malingering in a hostile fire pay zone; but also he failed to follow the clear mandate of RCM 1003(c)(1)(B)(i). 35 MJ at 735.

That is not to say that the military judge was off on a lark entirely when he recognized the significant difference between malingering and appellant's act. The social cost of appellant's crime and malingering may be the same, but the notion is not strange to the law that someone who *intentionally* follows a criminally prescribed course is treated more harshly than one who follows a similar course without such intent. *See, e.g.*, para. 9e (desertion with intent to avoid hazardous duty or to shirk important service—5 years; other desertions, 2 or 3 years); para. 11e (missing movement through design—2 years; missing movement through neglect—1 year); para. 44e (voluntary manslaughter—10 years; in-

voluntary manslaughter—3 years), Part IV, Manual, *supra*.[4]

Of course, if appellant's misdeed, in addition to being lesser included within malingering, was closely analogous to one or more other offenses for which there was provided a lesser punishment, the latter would control. *See* RCM 1003(c)(1)(B)(i). Except for his claim that his crime was closely analogous to wrongful discharge of a firearm so as to endanger human life, which we have rejected, 40 MJ at 75, appellant does not argue this possibility, however. In any event, it would not seem that any such possibility would carry a maximum sentence to confinement that is so low that there would be any fair risk of prejudice to appellant, who received confinement of only 18 months.

## IV

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.

---

**4.** This pattern continues in the proposed new paragraph 103a(e)(1) and (2) to Part IV. *See* n. 3, *supra*. Self-injury without intent to avoid service would be punishable, *inter alia*, by 2 years' confinement; if committed in a hostile fire pay zone, authorized confinement would increase to 5 years. Each is considerably less than the 10 years' liability for malingering in a hostile fire pay zone.