UNITED STATES, Appellee

v.

Lazzaric T. CALDWELL, Private
U.S. Marine Corps, Appellant

No. 12-0353

Crim. App. No. 201000557

United States Court of Appeals for the Armed Forces

Argued November 27, 2012

Decided April 29, 2013

BAKER, C.J., delivered the opinion of the Court, in which
ERDMANN, J., and COX, S.J., joined. RYAN, J., filed a
dissenting opinion in which STUCKY, J., joined.

Counsel

For Appellant: Lieutenant Michael B. Hanzel, JAGC, USN
(argued); Captain Michael Berry, USMC, and Captain Paul LeBlanc,
JAGC, USN (on brief).

For Appellee: Major David N. Roberts, USMC (argued); Colonel
Stephen C. Newman, USMC, and Brian K. Keller, Esq. (on brief);
Major Paul M. Ervasti, USMC.



Military Judge: D. M. Jones

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Caldwell, No. 12-0353/MC

Chief Judge BAKER delivered the opinion of the Court.

A military judge sitting as a special court-martial convicted Appellant, pursuant to his pleas, of orders violations, larceny, and wrongful self-injury without intent to avoid service in violation of Articles 92, 121, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 921, and 934 (2006). The military judge also convicted Appellant, contrary to his pleas, of a separate orders violation for wrongfully possessing "spice." The convening authority approved Appellant's sentence of confinement for 180 days and a bad-conduct discharge, but suspended certain portions of the confinement.

A divided panel of the United States Navy–Marine Corps Court of Criminal Appeals (CCA) affirmed the bad-conduct discharge, but there was no consensus on whether to affirm Appellant's sentence of confinement. United States v. Caldwell, No. NMCCA 201000557, 2011 WL 5547456 (N-M. Ct. Crim. App. Nov. 15, 2011) (unpublished). Two judges disagreed over whether there was a sufficient factual basis to support Appellant's plea to the self-injury offense, and the third judge found that the military judge was in no position to accept pleas of any kind prior to a board being convened under Rule for Courts–Martial (R.C.M.) 706. Compare Caldwell, 2011 WL 5547456, at *2, with id. at *5-*6 (Beal, J., concurring in part), and id. at *10

2

United States v. Caldwell, No. 12-0353/MC

(Maksym, J., dissenting).  Upon sua sponte reconsideration en banc, the court affirmed Appellant's convictions and sentence. United States v. Caldwell, 70 M.J. 630, 636 (N-M. Ct. Crim. App. 2011) (en banc).  Upon petition to this Court, we specified the following issue:

> WHETHER AS A MATTER OF LAW A BONA FIDE SUICIDE ATTEMPT IS PUNISHABLE AS SELF-INJURY UNDER ARTICLE 134.

For the reasons analyzed below, we conclude that there is a substantial basis in law and fact for questioning Appellant's guilty plea.  Appellant's plea does not establish that his conduct was to the prejudice of good order and discipline in the armed forces, or of a nature to bring discredit upon the armed forces, and thus does not satisfy the elements of the offense. Because we find Appellant's plea improvident, we need not address the more general and specified question as to whether and when a bona fide suicide attempt would satisfy the elements of an Article 134, UCMJ, offense.

## FACTS

At the time of the convictions, Appellant was a private in the United States Marine Corps serving in Okinawa, Japan. Regarding the wrongful self-injury charge, the CCA summarized the facts of the offense as follows:

> The appellant was alone in his barracks room, located in Camp Schwab, Okinawa, when he intentionally cut open his wrists with a razor blade, leaving a trail of blood on the barracks floor.  Record at 88, 92, 96.  At the time of his

self-injury, the appellant was in a highly distraught state having just learned that he was being ordered back into pretrial confinement. Gunnery Sergeant (GySgt) C, one of the staff noncommissioned officers in the appellant's unit, informed the appellant he was going back to the brig and allowed the appellant the privacy to call his parents from his barracks room before processing the appellant for confinement. Moments later, GySgt C returned to the room and discovered the appellant in his injured state. Id. at 92-93, 96. GySgt C administered immediate first aid by wrapping socks around the appellant's wounds and then called for the assistance of corpsmen, who responded with their medical kits. Id. at 92-93. After the appellant received acute care for his self-inflicted injuries, he was kept for a day in the base hospital's psychiatric ward for observation before being placed into pretrial confinement. Id. at 103.

The undeveloped facts in this guilty plea indicate the self-injury was a genuine suicide attempt which was precipitated by the appellant receiving two pieces of bad news: 1) the death of a close friend who had just returned home after being discharged, and 2) his commanding officer was ordering him back into pretrial confinement. These two events constituted what the appellant considered the "last straw" in a recent series of emotional hardships which ranged from the deaths of several family members to a variety of personal problems the appellant was having in his unit.

Another matter, which may have been a contributing factor leading to the appellant's actions, was the fact that the appellant had been treated for depression, post-traumatic stress disorder, and an unspecified personality disorder. Id. at 94-95. Part of his treatment included a prescription to a number of medications, including "Zoloft." Id. at 95. According to the appellant, the medications might have been the cause for seizures and brain hemorrhages which caused the appellant to stop taking his medication approximately two weeks before the self-injury. Id. Notwithstanding these issues, the appellant disavowed any severe mental disease or defect at the time of his offense. Id. at 97-98. Likewise, the appellant's defense counsel, who had a long-standing relationship with the appellant as he had represented him on other legal assistance and military justice matters, was convinced that an inquiry into the appellant's mental

4

responsibility or capacity was not warranted under RULE FOR COURTS-MARTIAL 706, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.). Id. at 97.

Caldwell, 70 M.J. at 631-32 (footnote omitted).

During his Care inquiry, the military judge noted that the self-injury offense was an "odd charge" because "it's basically criminalizing an attempted suicide." See United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969). The military judge asked if Appellant understood "why people would criminalize attempted suicide?" Appellant explained that his attempted suicide was criminalized because of the way it affected his unit:

[A] lot of people were shocked. A lot of people didn't know how to react towards it . . . . [s]o they would kind of talk to me a little bit and then back away. It was a touchy subject no one wanted to speak about. [I]t was just really weird for a couple weeks after that, sir.

Appellant also stated that officers were "really mad" at him because it sent the message that:

[B]asically I couldn't handle what was going on, and they couldn't help me at that point in time. So it makes them feel as if I can [not] really go to them and ask for help if they couldn't save this Marine right here.

Given these reactions, Appellant said that he had witnessed how his conduct was prejudicial to good order and discipline in the unit. Appellant also stated that his conduct was service discrediting because the public might look less favorably toward the Marine Corps and "[i]t would actually cause a badder [sic

outlook on the superiors" because if exposed, the public "would look at them as not doing their job."

In the first CCA decision, the divided court found that there was a substantial basis in fact to question the plea to self-injury, because Appellant's "mere supposition of possible effects is insufficient to demonstrate prejudice to good order and discipline." Caldwell, 2011 WL 5547456, at *2.[1] In the later en banc decision, the CCA affirmed the Article 134, UCMJ, conviction under clause 1, applying to prejudice of good order and discipline. Caldwell, 70 M.J. at 632, 636.

DISCUSSION

The issue before us involves the providence of Appellant's guilty plea to the Article 134, UCMJ, offense. Before accepting a guilty plea, the military judge must conduct an inquiry to determine whether there is factual basis for the plea, the accused understands the plea and is entering it voluntarily, and the accused admits each element of the offense. United States v. Mitchell, 66 M.J. 176, 177-78 (C.A.A.F. 2008). This Court reviews a military judge's decision to accept a guilty plea for an abuse of discretion. Id. at 178. We will not reject the plea unless there is "'a "substantial basis" in law and fact for

---

[1] Caldwell, 70 M.J. at 632 ("In our previous opinion, the court found that there was substantial basis in fact to question the plea to self-injury, i.e. there was not a factual basis in the record to support the terminal element.").

6

questioning the guilty plea.'" United States v. Glenn, 66 M.J. 64, 66 (C.A.A.F. 2008) (quoting United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991)).

Article 134, UCMJ, criminalizes "all disorders and neglects to the prejudice of good order and discipline in the armed forces" and "all conduct of a nature to bring discredit upon the armed forces."  The Manual for Courts-Martial, United States (MCM) prescribes two elements for self-injury without intent to avoid service:

(1)  That the accused intentionally inflicted injury upon himself or herself;

(2)  That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MCM pt. IV, para. 103a.b.  The explanation to the MCM further states that the "circumstances and extent of the injury . . . are relevant to a determination that the accused's conduct was prejudicial to good order and discipline, or service-discrediting."  Id. at pt. IV, para. 103a.c.(1).

Conduct Prejudicial to Good Order and Discipline

Conduct that is prejudicial to good order and discipline is "conduct that causes a reasonably direct and palpable injury to good order and discipline."  United States v. Cendejas, 62 M.J. 334, 340 (C.A.A.F. 2006) (citation omitted).  The acts in question must be "directly prejudicial to good order and

7

discipline," and not "prejudicial only in a remote or indirect sense." MCM pt. IV, para. 60.c.(2)(a).

This Court has held that an attempted suicide "may be a sufficient basis for a charge of intentional self-infliction of injury to the prejudice of good order and discipline." United States v. Ramsey, 40 M.J. 71, 75 (C.M.A. 1994). In Ramsey, the accused, who was deployed to Saudi Arabia during Operation Desert Shield/Desert Storm, shot himself in the shoulder. Id. at 72. Charged with intentionally injuring himself, the accused described his conduct as prejudicial to good order and discipline because: "I know for one thing it killed the morale of my unit. It also made them have to work a little harder to try [to] fill the position that I was supposed to be filling." Id. at 74. The Government argues that Ramsey is on point; Appellant demurs.

The parties also argue the relevance of United States v. Taylor, 17 C.M.A. 595, 38 C.M.R. 393 (1968). In Taylor, the accused, a confined inmate, "superficially slashed his arms with a razor blade in the presence of two cell mates, representing at the time that he wanted to outdo the performance of another inmate who had engaged in the same activity on an earlier occasion." Id. at 596, 38 C.M.R. at 394. This Court found that the accused's conduct had a direct adverse effect upon the good order and discipline of the command. Id. at 597, 38 C.M.R. at

395. <u>Taylor</u> was decided over a decade before PTSD was recognized in the <u>DSM</u>, Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 236-37 (3d ed. 1980), and the Court did not analyze or consider whether or how a bona fide suicide attempt qualified as an Article 134, UCMJ, offense.

Neither case is controlling precedent in the context presented here. Rather, the key question is whether there is a substantial basis in law or fact to question Appellant's plea to undermining good order and discipline. There is. The record is clear that Appellant engaged in a bona fide suicide attempt.[2] This is reflected in Appellant's statement that he "made a conscious decision at that time that [he] did not want to live" when he attempted suicide by slitting his wrists. It also is reflected in the military judge's statement that the self-injury offense was an "odd charge" because "it's basically criminalizing an attempted suicide." While Appellant's actions were precipitated by the death of a friend and the prospect of going to the brig, he was not charged with avoiding a military duty (confinement in the brig) and he did not state or admit that he attempted to kill himself to avoid the brig.

---

[2] A bona fide suicide attempt differs from a suicidal gesture. See Dep't of the Navy, Judge Advocate General Instr. 5800.7F, Manual of the Judge Advocate General ch. II, pt. E., para. 0218 c., at 2-36 (June 26, 2012). ("Self-inflicted injury, not prompted by a serious suicidal intent, is at most a suicidal gesture . . . .").

In this context, the CCA found that Appellant's plea to the element of undermining good order and discipline was based on the following factors:

> By cutting himself, the appellant caused a disorder in the barracks.  He needlessly exposed GySgt C to his bodily fluids and he caused corpsmen to respond with their medical kits, presumably expending medical supplies in the process.  Furthermore, the appellant did not go into pretrial confinement as ordered by his commanding officer; instead, he was transported to the hospital where he received acute medical care followed by treatment in the psychiatric ward for one day.  The appellant himself stated that the impact of his actions on his fellow Marines was palpable by the way they acted around him after he returned to the unit.

Caldwell, 70 M.J. at 632.

These factors are insufficient to establish a reasonably direct and palpable injury to good order and discipline.  Unlike the accused in Taylor, who "superficially slashed his arms with a razor blade in the presence of two cell mates," 17 C.M.A. at 596, 38 C.M.R. at 394, Appellant attempted suicide while alone in his barracks room.  When the gunnery sergeant walked into the room, he reacted to the sight of blood in a competent and professional manner.  The gunnery sergeant and medically trained corpsman administered first aid, as they would have in response to any other injury.  The corpsmen acted as they were trained to do, and there was no evidence presented that any medical resources they used were needed elsewhere.  Moreover, if the expenditure of medical resources alone undermined good order and discipline, then every bona fide suicide attempt requiring

10

medical attention would be per se prejudicial to good order and discipline and on that basis alone could be subject to prosecution. The brief delay in Appellant's pretrial confinement for medical care and one day of treatment in the psychiatric ward might have been relevant if Appellant were charged with avoiding a military duty, but has no significant impact here. Finally, Appellant's impression that members in the unit felt uneasy also does not provide a sufficient factual basis to establish a direct and palpable effect on good order and discipline.

## Conduct of a Nature to Bring Discredit on the Armed Forces

Conduct of a nature to bring discredit on the armed forces must have "a tendency to bring the service into disrepute or which tends to lower it in the public esteem." MCM pt. IV, para. 60.c.(3). This Court has relied on the prejudice to good order and discipline clause to establish the second element of the self-injury offense, rather than the service discrediting clause. See Ramsey, 40 M.J. at 75; Taylor, 17 C.M.A. at 597, 38 C.M.R. 395. In the present case, the CCA also elected to affirm the Article 134, UCMJ, conviction on the basis of prejudice to good order and discipline. Caldwell, 70 M.J. at 632, 636.

In his guilty plea, Appellant posited that his conduct was service discrediting because the public might look less favorably toward the Marine Corps and "[i]t would actually cause

11

a badder [sic] outlook on the superiors" because if exposed, the public "would look at them as not doing their job." Appellant's speculation does not establish that his conduct had a tendency to bring the service into disrepute or to lower it in the public esteem. To the contrary, this statement indicates that in Appellant's view it was not his actions that would cause discredit, but the failure of his unit's leaders that would have a tendency to cause discredit.[3] If this alone were discrediting, then it would appear to be discrediting for the whistleblower to disclose fraud or the victim of an offense to report a crime by a member of the military.

Here too, Appellant's plea is not sufficient to demonstrate the element of discredit. The Government has not offered, and the Appellant has not admitted to facts that would make his conduct discrediting. Therefore, we need not determine whether, as a general matter, a bona fide suicide attempt alone may be service discrediting, or is more properly considered a noncriminal matter requiring treatment not prosecution.

That is because, in this case, there is a substantial basis in fact and law to question Appellant's plea and the military judge abused his discretion in accepting the plea.

---

[3] We take judicial notice of the statement of the Secretary of Defense that: "[s]uicide prevention is first and foremost a leadership responsibility." Memorandum from Sec'y of Defense to Sec'ys of the Military Dep'ts et al., Suicide Prevention for Department of Defense Personnel (May 10, 2012).

DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed as to Charge III and the specification thereunder and the sentence.  The findings of guilty to Charge III and its specification are set aside.  The remaining findings are affirmed.  The record of trial is returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals.  That court may either dismiss Charge III and its specification and reassess the sentence, or it may order a rehearing.

United States v. Caldwell, 12-0353/MC

RYAN, Judge, with whom STUCKY, Judge, joins (dissenting):

It is the prerogative of Congress, not this Court, to enact laws governing the armed forces, including those that define criminal offenses. U.S. Const. art. I, § 8, cl. 14. In Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, Congress criminalized "all disorders and neglects to the prejudice of good order and discipline in the armed forces" and "all conduct of a nature to bring discredit upon the armed forces." A suicide attempt may constitute self-injury without intent to avoid service and is conduct punishable under this article. See United States v. Ramsey, 40 M.J. 71, 75 (C.M.A. 1994) (holding that "attempted suicide . . . may be a sufficient basis for a charge of intentional self-infliction of injury to the prejudice of good order and discipline"). While the convening authority's decision to refer charges against Appellant in the instant case may well be unfair or ill advised, the wisdom of that decision is not within our jurisdiction to review. See United States v. Bell, 38 M.J. 358, 365, 370 (C.M.A. 1993) (holding that the choice whether to exercise "the prosecution function . . . is plainly a matter of prosecutorial discretion, not judicial discretion," and constitutes a choice over which "[w]e have no ombudsman's override . . . however much we may agree or disagree with it").

Nonetheless, the majority endeavors to distinguish a "bona fide suicide attempt" from a mere "suicidal gesture," United States v. Caldwell, __ M.J. __ (9 n.2) (C.A.A.F. 2013), a distinction that is unsupported by the statutory elements of Article 134, UCMJ, or any of the elements of self-injury without intent to avoid service, as defined by the President.[1]  Neither Article 134, UCMJ, nor any element of the charged offense requires that the conduct be driven by a particular motive.  Cf. United States v. Wilson, 66 M.J. 39, 47 (C.A.A.F. 2008) (declining to "redraft Article 125, UCMJ," to include a mistake of fact defense "that Congress might have added but did not"). Yet no one disagrees that the offense of self-injury without intent to avoid service is well within the scope of conduct made criminal by Article 134, UCMJ.

While I question whether punishing either bona fide suicide attempts or suicidal gestures under Article 134, UCMJ, is wise or fair, that is a determination to be made by the President and

---

[1] The Manual for Courts-Martial defines the elements of self-injury without intent to avoid service:

(1)  That the accused intentionally inflicted injury upon himself or herself;

(2)  That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Manual for Courts-Martial, United States pt. IV, para. 103a.b. (2008 ed.) (MCM).

2

Congress, not this Court. See United States v. Solis, 46 M.J. 31, 35 (C.A.A.F. 1997) ("[P]olicy arguments . . . must be directed to Congress and the President for consideration, not to this Court."). It is undoubtedly within the prerogative of the Secretary of Defense to take an official position that "[s]uicide prevention is first and foremost a leadership responsibility" and that commanders "cannot tolerate any actions that belittle, haze, humiliate, or ostracize any individual, especially those who require or are responsibly seeking professional services." Memorandum from Sec'y of Defense to Sec'ys of the Military Departments et al., Suicide Prevention for Dep't of Defense Personnel (May 10, 2012).

However, the Secretary's view on the appropriate balance between empathy and prosecution in deterring suicide attempts in the military does not bear on the altogether different question whether, as a matter law, a suicide attempt is punishable under Article 134, UCMJ. Until Congress or the President takes action with regard to the criminality of bona fide suicide attempts, this Court is bound to apply the law as it currently exists.

Our role is not to create exceptions for certain conduct that the statute would otherwise plainly reach, but is merely to determine whether Appellant's guilty plea was provident. Because I conclude that "the military judge obtained an adequate factual basis to support the plea and correctly applied the

3

law," United States v. Inabinette, 66 M.J. 320, 321 (C.A.A.F. 2008), one that we would find adequate in any other context, I respectfully dissent.

A.

As a threshold matter, however counterintuitive it seems to me, a suicide attempt that rises to the level of self-inflicting an injury is punishable conduct under Article 134, UCMJ. See Ramsey, 40 M.J. at 75. Here, "Appellant's attempted suicide was not the substantive crime he faced; rather, his attempt to kill himself was the basis for his crime of self-inflicting an injury to the prejudice of good order and discipline." Id.

While ostensibly declining to address the issue "whether, as a general matter, a bona fide suicide attempt alone may be service discrediting, or is more properly considered a noncriminal matter requiring treatment not prosecution," Caldwell, __ M.J. at __ (12), the majority effectively places "bona fide" suicide attempts beyond the reach of Article 134, UCMJ. In doing so, the majority claims that Ramsey, where the appellant shot himself in the shoulder while on deployment in Saudi Arabia, is not "controlling precedent," id. at __ (9), because Ramsey was a "suicidal gesture," as opposed to a bona fide suicide, case. Caldwell, __ M.J. at __ (8-10 & n.2). At least three flaws undermine this reasoning.

4

First, the Court in Ramsey explicitly referred to the appellant's conduct as an "attempted suicide" and an "attempt to kill himself." 40 M.J. at 75. Not once did the Court refer to the appellant's conduct as a "suicidal gesture" or intimate that the appellant's conduct was merely a cry for help, or an attempt to avoid duty.

Second, distinguishing the infliction of self-injury as a mere suicidal gesture from the infliction of self-injury as a bona fide suicide attempt is inconsistent with the elements of self-injury without intent to avoid service, which requires only that the accused intended to injure himself, and does not require that the accused intended the injury only as a "gesture." See MCM pt. IV, para. 103a.b.(1).

Third, as a practical matter, courts are ill equipped to discern whether the subjective impetus behind a servicemember's self-inflicted injury was a genuine desire to kill oneself, the fact that distinguishes a "suicidal gesture," which the majority suggests may be punishable, Caldwell, __ M.J. at __ (8-9), from a "bona fide" suicide attempt, which it suggests may not. Id. Such a determination is best left to mental health experts. See, e.g., Rule for Courts-Martial (R.C.M.) 706(c)(1) (requiring that, when a mental examination is ordered to determine mental capacity or mental responsibility, "the matter shall be referred to a board consisting of one or more persons," each of whom

5

"shall be either a physician or a clinical psychologist" and one of whom must "be either a psychiatrist or a clinical psychologist").

                                    B.

The proper inquiry is whether Appellant's guilty plea was provident.  The purpose of Care's providence inquiry is twofold: "the first is a judicial determination of the providence of the plea; and the second is a total transcript of the plea inquiry for the purpose of review."  United States v. Lanzer, 3 M.J. 60, 62 (C.M.A. 1977) (interpreting United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969)).  "The fundamental requirement of plea inquiry under Care and R.C.M. 910 involves a dialogue in which the military judge poses questions about the nature of the offense and the accused provides answers that describe his personal understanding of the criminality of his or her conduct."  United States v. Hartman, 69 M.J. 467, 469 (C.A.A.F. 2011).

It is well settled that "[o]nce a military judge has accepted an accused's guilty pleas and entered findings of guilty, this Court will not set them aside unless we find a substantial basis in law or fact for questioning the plea."  United States v. Schweitzer, 68 M.J. 133, 137 (C.A.A.F. 2009) (citing Inabinette, 66 M.J. at 322). "A military judge's decision to accept a guilty plea is reviewed for an abuse of

6

discretion." Inabinette, 66 M.J. at 322. "A military judge abuses this discretion if he fails to obtain from the accused an adequate factual basis to support the plea -- an area in which we afford significant deference." Id. Under this deferential standard, "[i]f Appellant's providence inquiry established the facts necessary to support the elements of the [Article 134,] UCMJ offense charged, the plea to that charge is provident." United States v. Holbrook, 66 M.J. 31, 32 (C.A.A.F. 2008) (citing United States v. Faircloth, 45 M.J. 172, 174 (C.A.A.F. 1996)).

Here, in pleading guilty to one specification of self-injury, in violation of Article 134, UCMJ, Appellant's providence inquiry had to establish facts sufficient to support two elements: "(1) [t]hat the accused intentionally inflicted injury upon himself or herself; [and] (2) [t]hat, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces." MCM pt. IV, para. 103a.b.

During the providence inquiry, the military judge asked Appellant about the first element: (1) "And you [cut your wrists with a razor blade] to intentionally injure yourself?" and (2) "It's fair to say that you did this on purpose?" Appellant answered both questions in the affirmative. Appellant

confirmed that no one forced or coerced him to cut his wrists, and his decision was freely made.

"A military judge can presume, in the absence of contrary circumstances, that the accused is sane." United States v. Riddle, 67 M.J. 335, 338 (C.A.A.F. 2009); but see Dep't of the Navy, Judge Advocate General Instr. 5800.7F, Manual of the Judge Advocate General, ch. II, pt. E, para. 0218 c., at 2-36 (June 20, 2007) ("In view of the strong human instinct for self-preservation, suicide and a bona fide suicide attempt, as distinguished from a suicidal gesture, creates a strong inference of lack of mental responsibility."). However, where,

> the accused's statements or material in the record indicate a history of mental disease or defect on the part of the accused, the military judge must determine whether that information raises either a conflict with the plea and thus a possibility of a defense or only the 'mere possibility' of conflict.

United States v. Riddle, 67 M.J. 335, 338 (C.A.A.F. 2009) (internal citation omitted). "The former requires further inquiry on the part of the military judge, the latter does not." Id.

Here, the military judge explicitly asked defense counsel, "do you believe that there's any M.R.E. 706 issues here?"[2] Defense counsel replied that he "believe[d] that [Appellant]

---

[2] The military judge's reference to the Military Rules of Evidence was a misstatement. The correct MCM rule is R.C.M. 706.

8

knew what he was doing [when he cut his wrists], and he knew that what he was doing was wrong," and "at present [Appellant] has the ability to understand our conversations and to adequately defend himself."  Moreover, Appellant stated that (1) he "made a conscious decision at th[e] time that [he] did not want to live," (2) "it wasn't just temporary insanity," and (3) being off the medication that he was prescribed for his delayed posttraumatic stress disorder (PTSD), personality disorder, and depression did not give him a reason to inflict the injury on himself.[3]

In light of defense counsel and Appellant's statements, coupled with the presumption of sanity, the military judge reasonably weighed the evidence in determining that further inquiry under R.C.M. 706 was not required.  See also Riddle, 67 M.J. at 339 (holding that the appellant's guilty plea was provident, despite her bipolar diagnosis, where the military judge (1) "specifically asked her about her mental responsibility at the time the offenses were committed, ensuring that at the time of her offenses she understood both what she

---

[3] Despite the majority's contention to the contrary, Caldwell, __ M.J. at __ (9), the recognition of PTSD in the DSM, Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 463-68 (4th ed. 2000) (text rev.), does not go to whether bona fide suicide attempts are punishable under Article 134, UCMJ.  And, while a PTSD diagnosis may raise a defense in certain circumstances, for the reasons discussed above, it did not do so here.

9

was doing and the difference between right and wrong"; and (2) found "that she appeared to 'completely understand the nature and quality of the[] proceedings'").

In light of the above, the record clearly establishes a sufficient factual basis to support the first element of self-injury -- that he intentionally inflicted injury upon himself.

As to the second element, Appellant's guilty plea is provident if there is a sufficient factual basis for either clause 1 or clause 2 of the terminal element. In the course of the providence inquiry, Appellant admitted that his conduct, under the circumstances, was both prejudicial to good order and discipline and service discrediting.[4]

"Conduct prejudicial to good order and discipline is conduct that causes a reasonably direct and palpable injury to good order and discipline." United States v. Cendejas, 62 M.J. 334, 340 (C.A.A.F. 2006). Here, the facts elicited from Appellant were that he cut open his wrists in his barracks room, where he was found by one of his staff noncommissioned officers (SNCOs), who had to wrap socks around Appellant's wrists to try to stop the bleeding and call for medical help. Appellant was

---

[4] Appellant stipulated to the following: "That, under the circumstances, the conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces."

10

then hospitalized.[5]  According to Appellant, (1) his conduct "affected the rest of the unit," and when he came back "a lot of people were shocked [and] didn't know how to react"; (2) his actions made his SNCOs and officers feel as if "they couldn't help [him]"; and (3) other servicemembers would wonder if they could "really go to [the command] and ask for help if [the command] couldn't save [Appellant]."[6]  In light of the above,

---

[5] In the context of a self-injury charge "[t]he circumstances and extent of the injury . . . are relevant to a determination that the accused's conduct was prejudicial to good order and discipline, or service-discrediting."  MCM pt. IV, para. 103a.c.(1).

[6] The majority concludes that the "expenditure of medical resources alone" cannot undermine good order and discipline in this case, because "then every bona fide suicide attempt requiring medical attention would be per se prejudicial to good order and discipline."  Caldwell, __ M.J. at __ (10-11).  Even assuming that the majority is correct in its unsupported assertion that, absent evidence that the medical resources were needed elsewhere, the expenditure of medical resources -- including the response of servicemembers serving as emergency medical personnel -- does not undermine good order and discipline, id., Appellant's plea remains provident.  During the plea colloquy, Appellant described his conduct as:  (1) affecting unit morale; (2) engendering a feeling of failure among his SNCOs and officers; and (3) risking an erosion of servicemembers' confidence in their commanders.  Under our case law, these facts provide a more-than-adequate basis to support Appellant's plea.  See, e.g., United States v. Phillips, 70 M.J. 161, 163 (C.A.A.F. 2011) (holding that to establish a violation under clause 2 of Article 134, UCMJ, "evidence that the public was actually aware of the conduct is not necessarily required"); United States v. Green, 68 M.J. 266, 270 (C.A.A.F. 2010) (holding that the appellant's conviction of indecent language under Article 134, UCMJ, for uttering the sound "mmmm-mmmm-mmmm," was legally sufficient); United States v. Vaughan, 58 M.J. 29, 36 n.7 (C.A.A.F. 2003) (finding the appellant's guilty plea provident where the military judge asked the accused if she "agree[d] that if somebody out there heard about this . . . they

Appellant's guilty plea provided a sufficient factual basis under our case law for finding a "direct and palpable" effect on good order and discipline. Cendejas, 62 M.J. at 340. See, e.g., United States v. Erickson, 61 M.J. 230, 232-33 (C.A.A.F. 2005) (finding that conduct that undermined an appellant's capability and readiness to perform military duties had a direct and palpable effect on good order and discipline); United States v. Irvin, 60 M.J. 23, 24-26 (C.A.A.F. 2004) (finding a sufficient factual basis to support clause 1 and clause 2 of Article 134's terminal element where the appellant admitted that he had possessed child pornography but there was no evidence that any other servicemembers were aware of, or saw the depictions).

In addition, Appellant pleaded to facts that demonstrate his belief that his conduct was service discrediting. To be service discrediting, Appellant's conduct must "tend to bring the service into disrepute if it were known." United States v.

would look down upon an Air Force member leaving their child unaccompanied . . . for that lengthy a period of time" and the accused responded, "Yes, ma'am"); United States v. Schumann, No. ACM 35119, 2004 CCA LEXIS 167, at *8, 2004 WL 1724818, at *3 (A.F. Ct. Crim. App. July 29, 2004) (finding a guilty plea provident where the appellant: (1) stipulated that his "failure to place or maintain funds in his account was . . . to the prejudice of good order and discipline in the armed forces, and was of a nature to bring discredit upon the armed forces"; and (2) simply replied "Yes, Your Honor" when the military judge asked whether his conduct was service discrediting and would tend to lessen the esteem that the public had for the military), petition denied, 60 M.J. 430 (C.A.A.F. 2004).

Phillips, 70 M.J. 161, 166 (C.A.A.F. 2011). Evidence "that anyone witnessed or became aware of the conduct," has been held to be merely one factor to consider. Id. As a general matter, we have required that an accused need only explain how his conduct would negatively impact public opinion in theory, not that his conduct has, in fact, had a negative impact on public opinion. See, e.g., United States v. Roderick, 62 M.J. 425, 428 (C.A.A.F. 2006) (finding that the appellant's guilty plea to clause 2 of the terminal element was provident where he "admitted that his actions . . . 'may lower the service in public esteem' if people became aware of what he was doing").

Here, when asked what the public would think about Marines attempting suicide, Appellant stated that the public would think "bad thoughts about [the] whole command." Appellant also observed that if his predicament made the news, the public would view his supervisors as not having done their jobs, even though Appellant had never told his supervisors about his depression.

The majority contends that these facts demonstrate that the command's conduct, not Appellant's conduct, was service discrediting, despite Appellant's statement that his command "knew nothing of [his depression]." Caldwell, __ M.J. at __ (12). While it is certainly reasonable to disagree as to whether particular conduct is or is not service discrediting, it is not reasonable to say that the military judge abused his

13

discretion in accepting this plea.  Where, as here, Appellant sought no help from the command, any negative perception of the command's failure to help could reasonably derive from the Appellant's decision to attempt suicide by intentionally cutting his wrists instead of seeking help from his command.  By not reaching out to his command for help, Appellant precluded the command's help.  Thus, it is Appellant's conduct, not the command's conduct, which forms the basis of the public's potentially negative view of the military in light of these events -- a fact that Appellant recognized and admitted.  The majority ignores the purpose of the Care inquiry, and Appellant's own express words as to why he felt his conduct was service discrediting, obfuscating the issue and flipping the genesis of the "act" that is potentially service discrediting to protect hypothetical whistleblowers and victims, despite the nonexistence of an enumerated Article 134, UCMJ, offense proscribing such conduct.

Accordingly, because the factual circumstances as revealed and admitted to by Appellant objectively support the plea as to each element of self-injury in violation of Article 134, UCMJ, the military judge did not abuse his discretion in accepting Appellant's guilty plea to this offense as provident under the ordinary standards employed to review this issue.  Whether to subject a particular Article 134, UCMJ, guilty plea to

14

heightened scrutiny cannot hinge on this Court's diagnosis that the conduct at issue is a "matter requiring treatment," Caldwell, __ M.J. at __ (12), rather than a crime -- many of our cases, including this one, are both.  I question whether the majority's approach will prevail in other contexts where the offense is one they deem more suitable for prosecution, even though that is not a matter within our purview, but is one committed to the convening authority's discretion.  R.C.M. 601.

### C.

I would affirm the decision of the Navy-Marine Corps Court of Criminal Appeals.