Chief Judge BAKER
delivered the opinion of the Court.
A military judge sitting as a special court-martial convicted Appellant, pursuant to his pleas, of orders violations, larceny, and wrongful self-injury without intent to avoid service in violation of Articles 92, 121, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 921, and 934 (2006). The military judge also convicted Appellant, contrary to his pleas, of a separate orders violation for wrongfully possessing “spice.” The convening authority approved Appellant’s sentence of confinement for 180 days and a bad-conduct discharge, but suspended certain portions of the confinement.
A divided panel of the United States Navy-Marine Corps Court of Criminal Appeals (CCA) affirmed the bad-conduct discharge, but there was no consensus on whether to affirm Appellant’s sentence of confinement. United States v. Caldwell, No. NMCCA 201000557, 2011 WL 5547456 (N.M.Ct.Crim.App. Nov. 15, 2011) (unpublished). Two judges disagreed over whether there was a sufficient factual basis to support Appellant’s plea to the self-injury offense, and the third judge found that the military judge was in no position to accept pleas of any kind prior to a board being convened under Rule for Courts-Martial (R.C.M.) 706. Compare Caldwell, 2011 WL 5547456, at *2, with id. at *5-*6 (Beal, J., concurring in part), and id. at *10 (Maksym, J., dissenting). Upon sua sponte reconsideration en banc, the court affirmed Appellant’s convictions and sentence. United States v. Caldwell, 70 M.J. 630, 636 (N.-M.Ct.Crim.App.2011) (en banc). Upon petition to this Court, we specified the following issue:
WHETHER AS A MATTER OF LAW A BONA FIDE SUICIDE ATTEMPT IS PUNISHABLE AS SELF-INJURY UNDER ARTICLE 134.
For the reasons analyzed below, we conclude that there is a substantial basis in law and fact for questioning Appellant’s guilty plea. Appellant’s plea does not establish that his conduct was to the prejudice of good order and discipline in the armed forces, or of a nature to bring discredit upon the armed forces, and thus does not satisfy the elements of the offense. Because we find Appellant’s plea improvident, we need not address the more general and specified question as to whether and when a bona fide suicide attempt would satisfy the elements of an Article 134, UCMJ, offense.
FACTS
At the time of the convictions, Appellant was a private in the United States Marine Corps serving in Okinawa, Japan. Regarding the wrongful self-injury charge, the CCA summarized the facts of the offense as follows:
The appellant was alone in his barracks room, located in Camp Schwab, Okinawa, when he intentionally cut open his wrists with a razor blade, leaving a trail of blood on the barracks floor. Record at 88, 92, 96. At the time of his self-injury, the appellant was in a highly distraught state having just learned that he was being ordered back into pretrial confinement. Gunnery Sergeant (GySgt) C, one of the staff noncommissioned officers in the appellant’s unit, informed the appellant he was going back to the brig and allowed the appellant the privacy to call his parents from his barracks room before processing the appellant for confinement. Moments later, GySgt C returned to the room and discovered the appellant in his injured state. Id. at 92-93, 96. GySgt C administered immediate first aid by wrapping socks around the appellant’s wounds and then called for the assistance of corpsmen, who responded with their medical kits. Id. at 92-93. After the appellant received acute care for his self-inflicted injuries, he was kept for a day in the base hospital’s psychiatric ward for observation before being placed into pretrial confinement. Id. at 103.
*139 The undeveloped facts in this guilty plea indicate the self-injury was a genuine suicide attempt which was precipitated by the appellant receiving two pieces of bad news: 1) the death of a close friend who had just returned home after being discharged, and 2) his commanding officer was ordering him back into pretrial confinement. These two events constituted what the appellant considered the “last straw” in a recent series of emotional hardships which ranged from the deaths of several family members to a variety of personal problems the appellant was having in his unit.
Another matter, which may have been a contributing factor leading to the appellant’s actions, was the fact that the appellant had been treated for depression, post-traumatic stress disorder, and an unspecified personality disorder. Id. at 94-95. Part of his treatment included a prescription to a number of medications, including “Zoloft.” Id. at 95. According to the appellant, the medications might have been the cause for seizures and brain hemorrhages which caused the appellant to stop taking his medication approximately two weeks before the self-injury. Id. Notwithstanding these issues, the appellant disavowed any severe mental disease or defect at the time of his offense. Id. at 97-98. Likewise, the appellant’s defense counsel, who had a long-standing relationship with the appellant as he had represented him on other legal assistance and military justice matters, was convinced that an inquiry into the appellant’s mental responsibility or capacity was not warranted under RULE FOR COURTS-MARTIAL 706, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.). Id. at 97.
Caldwell, 70 M.J. at 631-32 (footnote omitted).
During his Care inquiry, the military judge noted that the self-injury offense was an “odd charge” because “it’s basically criminalizing an attempted suicide.” See United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969). The military judge asked if Appellant understood “why people would criminalize attempted suicide?” Appellant explained that his attempted suicide was criminalized because of the way it affected his unit:
[A] lot of people were shocked. A lot of people didn’t know how to react towards it .[s]o they would kind of talk to me a little bit and then back away. It was a touchy subject no one wanted to speak about. [I]t was just really weird for a couple weeks after that, sir.
Appellant also stated that officers were “really mad” at him because it sent the message that:
[Bjasically I couldn’t handle what was going on, and they couldn’t help me at that point in time. So it makes them feel as if I can [not] really go to them and ask for help if they couldn’t save this Marine right here.
Given these reactions, Appellant said that he had witnessed how his conduct was prejudicial to good order and discipline in the unit. Appellant also stated that his conduct was service discrediting because the public might look less favorably toward the Marine Corps and “[i]t would actually cause a badder [sic] outlook on the superiors” because if exposed, the public “would look at them as not doing their job.”
In the first CCA decision, the divided court found that there was a substantial basis in fact to question the plea to self-injury, because Appellant’s “mere supposition of possible effects is insufficient to demonstrate prejudice to good order and discipline.” Caldwell, 2011 WL 5547456, at *2.[1] In the later en banc decision, the CCA affirmed the Article 134, UCMJ, conviction under clause 1, applying to prejudice of good order and discipline. Caldwell, 70 M.J. at 632, 636.
DISCUSSION
The issue before us involves the providence of Appellant’s guilty plea to the *140 Article 134, UCMJ, offense. Before accepting a guilty plea, the military judge must conduct an inquiry to determine whether there is factual basis for the plea, the accused understands the plea and is entering it voluntarily, and the accused admits each element of the offense. United States v. Mitchell, 66 M.J. 176, 177-78 (C.A.A.F.2008). This Court reviews a military judge’s decision to accept a guilty plea for an abuse of discretion. Id. at 178. We will not reject the plea unless there is “ ‘a “substantial basis” in law and fact for questioning the guilty plea.’ ” United States v. Glenn, 66 M.J. 64, 66 (C.A.A.F.2008) (quoting United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991)).
Article 134, UCMJ, criminalizes “all disorders and neglects to the prejudice of good order and discipline in the armed forces” and “all conduct of a nature to bring discredit upon the armed forces.” The Manual for Courts-Martial, United States (MCM) prescribes two elements for self-injury without intent to avoid service:
(1) That the accused intentionally inflicted injury upon himself or herself;
(2) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
MCM pt. IV, para. 103a.b. The explanation to the MCM further states that the “circumstances and extent of the injury ... are relevant to a determination that the accused’s conduct was prejudicial to good order and discipline, or service-discrediting.” Id. at pt. IV, para. 103a.e.(l).

Conduct Prejudicial to Good Order and Discipline

Conduct that is prejudicial to good order and discipline is “conduct that causes a reasonably direct and palpable injury to good order and discipline.” United States v. Cendejas, 62 M.J. 334, 340 (C.A.A.F.2006) (citation omitted). The acts in question must be “directly prejudicial to good order and discipline,” and not “prejudicial only in a remote or indirect sense.” MCM pt. IV, para. 60.-c.(2)(a).
This Court has held that an attempted suicide “may be a sufficient basis for a charge of intentional self-infliction of injury to the prejudice of good order and discipline.” United States v. Ramsey, 40 M.J. 71, 75 (C.M.A.1994). In Ramsey, the accused, who was deployed to Saudi Arabia during Operation Desert Shield/Desert Storm, shot himself in the shoulder. Id. at 72. Charged with intentionally injuring himself, the accused described his conduct as prejudicial to good order and discipline because: “I know for one thing it killed the morale of my unit. It also made them have to work a little harder to try [to] fill the position that I was supposed to be filling.” Id. at 74. The Government argues that Ramsey is on point; Appellant demurs.
The parties also argue the relevance of United States v. Taylor, 17 C.M.A. 595, 38 C.M.R. 393 (1968). In Taylor, the accused, a confined inmate, “superficially slashed his arms with a razor blade in the presence of two cell mates, representing at the time that he wanted to outdo the performance of another inmate who had engaged in the same activity on an earlier occasion.” Id. at 596, 38 C.M.R. at 394. This Court found that the accused’s conduct had a direct adverse effect upon the good order and discipline of the command. Id. at 597, 38 C.M.R. at 395. Taylor was decided over a decade before PTSD was recognized in the DSM, Am. Psychiatric Ass’n, Diagnostic and Statistical Manual of Mental Disorders 236-37 (3d ed. 1980), and the Court did not analyze or consider whether or how a bona fide suicide attempt qualified as an Article 134, UCMJ, offense.
Neither case is controlling precedent in the context presented here. Rather, the key question is whether there is a substantial basis in law or fact to question Appellant’s plea to undermining good order and discipline. There is. The record is clear that Appellant engaged in a bona fide suicide *141 attempt.[2] This is reflected in Appellant’s statement that he “made a conscious decision at that time that [he] did not want to live” when he attempted suicide by slitting his wrists. It also is reflected in the military judge’s statement that the self-injury offense was an “odd charge” because “it’s basically criminalizing an attempted suicide.” While Appellant’s actions were precipitated by the death of a friend and the prospect of going to the brig, he was not charged with avoiding a military duty (confinement in the brig) and he did not state or admit that he attempted to kill himself to avoid the brig.
In this context, the CCA found that Appellant’s plea to the element of undermining good order and discipline was based on the following factors:
By cutting himself, the appellant caused a disorder in the barracks. He needlessly exposed GySgt C to his bodily fluids and he caused corpsmen to respond with their medical kits, presumably expending medical supplies in the process. Furthermore, the appellant did not go into pretrial confinement as ordered by his commanding officer; instead, he was transported to the hospital where he received acute medical care followed by treatment in the psychiatric ward for one day. The appellant himself stated that the impact of his actions on his fellow Marines was palpable by the way they acted around him after he returned to the unit.
Caldwell, 70 M.J. at 632.
These factors are insufficient to establish a reasonably direct and palpable injury to good order and discipline. Unlike the accused in Taylor, who “superficially slashed his arms with a razor blade in the presence of two cell mates,” 17 C.M.A. at 696, 38 C.M.R. at 394, Appellant attempted suicide while alone in his barracks room. When the gunnery sergeant walked into the room, he reacted to the sight of blood in a competent and professional manner. The gunnery sergeant and medically trained corpsman administered first aid, as they would have in response to any other injury. The corpsmen acted as they were trained to do, and there was no evidence presented that any medical resources they used were needed elsewhere. Moreover, if the expenditure of medical resources alone undermined good order and discipline, then every bona fide suicide attempt requiring medical attention would be per se prejudicial to good order and discipline and on that basis alone could be subject to prosecution. The brief delay in Appellant’s pretrial confinement for medical care and one day of treatment in the psychiatric ward might have been relevant if Appellant were charged with avoiding a military duty, but has no significant impact here. Finally, Appellant’s impression that members in the unit felt uneasy also does not provide a sufficient factual basis to establish a direct and palpable effect on good order and discipline.

Conduct of a Nature to Bring Discredit on the Armed Forces

Conduct of a nature to bring discredit on the armed forces must have “a tendency to bring the service into disrepute or which tends to lower it in the public esteem.” MCM pt. IV, para. 60.e.(3). This Court has relied on the prejudice to good order and discipline clause to establish the second element of the self-injury offense, rather than the service discrediting clause. See Ramsey, 40 M.J. at 76; Taylor, 17 C.M.A. at 597, 38 C.M.R. at 395. In the present case, the CCA also elected to affirm the Article 134, UCMJ, conviction on the basis of prejudice to good order and discipline. Caldwell, 70 M.J. at 632, 636.
In his guilty plea, Appellant posited that his conduct was service discrediting because the public might look less favorably toward the Marine Corps and “[i]t would actually cause a badder [sic] outlook on the superiors” because if exposed, the public “would look at them as not doing their job.” Appellant’s speculation does not establish that his conduct had a tendency to bring the service into disrepute or to lower it in the public esteem. To the contrary, this statement indicates that in Appellant’s view it was *142 not his actions that would cause discredit, but the failure of his unit’s leaders that would have a tendency to cause discredit.[3] If this alone were discrediting, then it would appear to be discrediting for the whistleblower to disclose fraud or the victim of an offense to report a crime by a member of the military.
Here too, Appellant’s plea is not sufficient to demonstrate the element of discredit. The Government has not offered, and the Appellant has not admitted to facts that would make his conduct discrediting. Therefore, we need not determine whether, as a general matter, a bona fide suicide attempt alone may be service discrediting, or is more properly considered a noneriminal matter requiring treatment not prosecution.
That is because, in this case, there is a substantial basis in fact and law to question Appellant’s plea and the military judge abused his discretion in accepting the plea.
DECISION
The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed as to Charge III and the specification thereunder and the sentence. The findings of guilty to Charge III and its specification are set aside. The remaining findings are affirmed. The record of trial is returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals. That court may either dismiss Charge III and its specification and reassess the sentence, or it may order a rehearing.

. Caldwell, 70 M.J. at 632 ("In our previous opinion, the court found that there was substantial basis in fact to question the plea to self-injury, i.e. there was not a factual basis in the record to support the terminal element.").

. A bona fide suicide attempt differs from a suicidal gesture. See Dep’t of the Navy, Judge Advocate General Instr. 5800.7F, Manual of the Judge Advocate General ch. II, pt. E., para. 0218 c., at 2-36 (June 26, 2012). (“Self-inflicted injury, not prompted by a serious suicidal intent, is at most a suicidal gesture ....’’).

. We take judicial notice of the statement of the Secretary of Defense that: “[s]uicide prevention is first and foremost a leadership responsibility.” Memorandum from Sec’y of Defense to Sec'ys of the Military Dep’ts et al., Suicide Prevention for Department of Defense Personnel (May 10, 2012).